# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

_____
                                    )

**MARK DANIEL LYTTLE,**     )

         )

      **Plaintiff,**      )

         )     **Civil Action**

**v.**                   )     **Case No. 1:10-CV-3302-CAP**

         )

**UNITED STATES OF AMERICA,** )

**et al.,**               )

         )

      **Defendants.**     )

_____)

## MEMORANDUM IN SUPPORT OF THE UNITED STATES' AND OFFICIAL CAPACITY DEFENDANTS' <u>MOTION TO DISMISS AND FOR SUMMARY JUDGMENT</u>[*]

The plaintiff in this case, Mark Daniel Lyttle, alleges that he was detained and then deported to Mexico despite being a U.S. citizen. Although his complaint obviously tells only his side of the story, the deportation of a citizen is unfortunate even where (as here) it appears the citizen may have played a role in the deportation decision. All that said, Lyttle's two claims against several federal

---

[*] The Court previously granted these defendants leave to submit an oversize brief with respect to this filing. Docket No. 46.

officers in their official capacity and his four claims against the United States

under the Federal Tort Claims Act ("FTCA") are not legally viable.[1]

## **INTRODUCTION**

As discussed below, subject matter jurisdiction is not proper as to Lyttle's

official capacity claims (Counts 4 and 5).  That is because the statutory and

constitutional provisions Lyttle relies on do not waive the government's sovereign

immunity from money damages, and he lacks standing to obtain injunctive relief.

Three of Lyttle's FTCA claims (Counts 6, 7 and 9) are also jurisdictionally

barred, as they are premised on the performance of discretionary functions, the

exercise of a statutorily-mandated action, or both; those claims are thus subject to

the FTCA's "discretionary function" and "due care" exceptions.  *See* 28 U.S.C. §

2680(a).  At the same time, Lyttle cannot satisfy all of the elements under Georgia

law for the underlying torts.  A false imprisonment claim (Count 6) cannot lie

because Lyttle was detained pursuant to valid legal process.  Next, the United

---

[1]  The following defendants are sued solely in their official capacity:  Eric
H. Holder, Attorney General of the United States; Janet Napolitano, Secretary of
the Department of Homeland Security; Thomas G. Snow, Director of the
Executive Office of Immigration Review ("EOIR"); and John T. Morton, Director
of the U.S. Immigration and Customs Enforcement ("ICE") (collectively referred
to as the "official capacity defendants").  Compl. ¶¶ 9-12.  Lyttle separately has
sued eight federal employees in their individual capacity; they have filed their own
motion to dismiss on this same date.  The present motion addresses only those
claims against the United States and the official capacity defendants (Counts 4-9).

States cannot be liable for an allegedly negligent investigation of his citizenship (Count 7) because a private person would not owe a duty to Lyttle in similar circumstances.  Lyttle's other FTCA negligence claim, based on his alleged suicide attempt (Count 8), fails because the indisputable evidence shows that the government did not breach any duty it might have owed Lyttle, and that Lyttle's own actions were an intervening cause.  And with no allegations of "extreme and outrageous" conduct, Lyttle's intentional infliction of emotional distress ("IIED") cause of action (Count 9) is also legally insufficient.  Finally, to the extent the Court does not dismiss Lyttle's FTCA claims in their entirety, it should find at the very least that the FTCA's foreign country exception, *see* 28 U.S.C. § 2680(k), limits those claims to only the harm that Lyttle allegedly suffered while in federal custody and inside the United States.[2]

## BACKGROUND[3]

On August 14, 2008, Lyttle was sentenced to a term of 100 days in the custody of the North Carolina Department of Correction for assaulting a female.

---

[2]  This motion seeks summary judgment under Federal Rule of Civil Procedure 56 only as to the second of Lyttle's FTCA negligence claims (Count 8); it seeks to dismiss under Rule 12(b) the remainder of the claims against the United States and official capacity defendants (Counts 4-7 and 9).

[3]  The allegations recited *infra* that are derived from Lyttle's complaint (Docket No. 1) are assumed to be true solely for the purpose of this motion.

Compl. ¶ 35.  While serving that sentence, he was identified as a suspected illegal alien.  *Id*. ¶ 37.  Lyttle then was interviewed by an ICE agent in North Carolina on September 2, 2008.  *Id*. ¶ 37.  At the conclusion of that interview, Lyttle signed a "Record of Sworn Statement in Affidavit Form," in which he affirmed that he was a citizen of Mexico, that his correct name was Jose Thomas and Mark Daniel Lyttle was an alias, and that he entered the United States without permission when he was three years old.  *Id.* ¶¶ 38, 40; *see* Exh. A.[4]

A few days later, on September 5, 2008, ICE executed several legal documents to begin removal proceedings against Lyttle.  Compl. ¶¶ 46-49.  Those included a "Warrant for Arrest of Alien," a "Notice of Intent to Issue Final Administrative Removal Order," a "Notice of Custody Determination," and an "Immigration Detainer – Notice of Action."  *Id.*; Exhs. B, C, D, E.  The first three

---

[4]  A copy of Lyttle's sworn statement is attached as Exhibit A and is submitted solely in connection with the Rule 12(b) portion of this motion.  The Court may consider this document when ruling on the motion to dismiss, either because it is proper to submit evidence outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), *see Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001), or because, for purposes of Rule 12(b)(6), Lyttle has incorporated this particular document into his complaint by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Compl. ¶¶ 38-42.  The foregoing is equally true of Exhibits B through I, which are also submitted with this motion and incorporated by reference into the complaint.  *See* Compl. ¶¶ 46-49, 62, 86, 93, 125-26.  The only materials we have submitted solely for purposes of summary judgment are Exhibits K and L.

of these documents were served on Lyttle personally on September 8, 2008; by signing them, Lyttle confirmed the representations he had made before of being a citizen of Mexico and illegally inside the United States, agreed to be voluntarily deported to Mexico, and waived his rights to a hearing before an immigration judge.  Compl. ¶¶ 50-52; Exhs. C, D.  The immigration detainer was directed to the North Carolina authorities to notify them that Lyttle was to be transferred to ICE custody once he had served the remainder of his state criminal sentence. Compl. ¶ 49; Exh. E.  That occurred on October 28, 2008, when ICE took custody of Lyttle and transported him to the Stewart Detention Center ("SDC") in Lumpkin, Georgia, pending removal proceedings.  Compl. ¶ 56.

Shortly after arriving at the SDC, on November 3, 2008, ICE Deportation Officer David Collado (one of the individual defendants in this case) took another sworn statement from Lyttle, who this time indicated he was in fact a U.S. citizen, born in North Carolina.  *Id*. ¶ 58.  Collado thus reclassified Lyttle's case from an administrative removal to a "Notice to Appear," meaning his immigration status would be decided by an immigration judge.  *Id.* ¶ 61.  ICE Supervisory Detention and Deportation Officer Tracy Moten (another individual defendant here) issued the formal "Notice to Appear" on November 5, 2008.  *Id.* ¶ 62; Exh. F.

While awaiting his immigration hearing, Lyttle claims that on November 17, 2008, unnamed employees of the U.S. Public Health Service ("PHS"), which is alleged to be "responsible for the provision and administration of all health care services for detainees in ICE custody at SDC," gave him or his escort "approximately 60 tablets of Glucophage," a medication used to treat diabetes. Compl. ¶ 81.  He further states that, on that same day, he "ingested all 60 [G]lucophage pills in an attempt to commit suicide."  *Id.* ¶ 83.  He was then taken to a nearby hospital, where he was "held and monitored for several days on suicide watch, and released back to the SDC after his condition improved."  *Id.* ¶ 84.

As set out in the accompanying "Statement of Material Facts" ("SMF"), however, no PHS employee provided Lyttle with sixty tablets of Glucophage on November 17, 2008, or any other day while he was detained at the SDC, and Lyttle himself admitted at the time that he did not try to commit suicide. According to his medical records, Lyttle was administered two tablets of Metformin (the generic name for Glucophage) per day, once in the morning and once in the evening, beginning with the evening dosage on November 4, 2008. SMF ¶ 1.  To obtain this medication, Lyttle was required to stand in the pill line; he was not allowed to keep it on his person.  *Id.* ¶ 2.  To avoid the hoarding of medication, nurses at the SDC are trained to closely observe detainees to ensure

that they actually take the medication in the nurse's presence.  *Id*. ¶ 3.  Lyttle was

administered his normal dosage of two tablets of Metformin on November 16,

2008, and was not given any medication on November 17, 2008, as he already had

been taken to the hospital.  *Id*. ¶ 4.  Giving Lyttle sixty tablets all at once would

have been in direct violation of the explicit instructions that he not be allowed to

keep his medication on his person.  *Id*. ¶ 5.  The records also show that Lyttle

stated to various health care professionals at the hospital and at the SDC

immediately afterwards that he "did not try to kill [him]self" and that he was "not

suicidal and [he] never was."  *Id*. ¶ 6.  He claimed instead that he tried to overdose

"for fun" and because "he was bored" and wanted "to get high."  *Id*.

A few weeks after Lyttle returned from the hospital, the immigration judge

heard his case and, on December 9, 2008, issued an order of removal.  Compl. ¶

86; Exh. G.  Three days later, a "Warrant of Removal/Deportation" was issued,

confirming that Lyttle was "subject to removal/deportation" based upon the

immigration judge's final order of removal.  Compl. ¶ 93; Exh. H.  Lyttle was then

transported to the Mexican border on December 18, 2008, and spent the next four

months in various Central American countries.  Compl. ¶¶ 101-17.

On April 22, 2009, Lyttle returned to the United States on a plane bound for

Nashville, Tennessee, which first stopped over in Atlanta.  *Id*. ¶¶ 118-19.  While

trying to pass through customs, however, Lyttle was detained as an illegal alien. *Id.* ¶ 119.  Citing the immigration judge's prior order of removal, the U.S. Customs and Border Protection ("CBP") (not ICE, as Lyttle alleges) issued a "Notice and Order of Expedited Removal" as to Lyttle on April 23, 2009.  *Id*. ¶¶ 125-26; Exh. I.  But the very next day, CBP decided to release him.  Compl. ¶ 128.

Four days later, on April 28, 2009, the Department of Homeland Security ("DHS") filed a motion with the immigration court to terminate removal proceedings against Lyttle.  *Id*. ¶ 129.  That motion summarized the events leading up to that point:  that Lyttle had represented to immigration officials and the immigration court "that he was a Mexican citizen who had illegally entered the United States without inspection or parole;" that an order of removal was issued on December 12, 2008, based on that representation; and that, subsequent to that order, "it was determined that [Lyttle] was not a Mexican citizen and is, in fact, a citizen of the United States."  Compl. Exh. C.[5]  The motion to terminate was

---

[5]  A document attached to a pleading "is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including a motion to dismiss.  *See Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

granted the same day in an order confirming that removal proceedings against Lyttle were terminated with prejudice.  Compl. ¶ 129; Exh. J.[6]

## DISCUSSION

As explained below, Lyttle cannot meet his burden of establishing subject matter jurisdiction over both of his official capacity claims (Counts 4 and 5) and three of his FTCA claims (Counts 6, 7, and 9), all of which therefore should be dismissed under Rule 12(b)(1).  *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247-48 (11th Cir. 2005) ("The party bringing the claim bears the burden of establishing federal subject-matter jurisdiction.").  Those same three FTCA claims fail as a matter of law and should be dismissed under Rule 12(b)(6) as well.  Because there is no genuine issue of fact as to the remaining FTCA claim (Count 8), it should be dismissed under Rule 56.  Finally, even if the Court does not dismiss the FTCA claims outright, it still should find that they are limited by the FTCA's foreign country exception.

---

[6] Although this particular document is not incorporated by reference into Lyttle's complaint, it is properly before this Court under Rule 12(b)(1) and is attached solely for the purpose of deciding subject matter jurisdiction over the injunctive relief claims.  *See Goodman*, 259 F.3d at 1331 n.6; *infra* Section I-B.

## I.     Jurisdiction Is Not Proper As To Lyttle's Official Capacity Claims

In his Fourth and Fifth causes of action, Lyttle invokes the Fifth Amendment, a section of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1229a(b)(4)(B), and Section 504 of the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794, to seek both monetary and injunctive relief against the official capacity defendants.  Compl. ¶¶ 149-71.  None of these constitutional and statutory provisions, however, waives the government's sovereign immunity from damages.  Separately, Lyttle lacks standing to pursue injunctive relief.  Both of his official capacity claims therefore should be dismissed under Rule 12(b)(1).

### A.     Sovereign Immunity Bars The Official Capacity Damages Claims

Of Lyttle's two official capacity claims, only Count Four includes a request for monetary relief.  In that count, Lyttle claims he is entitled to damages from the official capacity defendants under the Rehabilitation Act.  Compl. ¶ 164.  The Supreme Court says otherwise.

It is well-established that a suit against a federal employee in his or her official capacity is, in essence, a suit against the United States.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  It is equally well-established that, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); that the terms of

-10-

the government's "consent to be sued in any court define that court's jurisdiction to entertain the suit," *United States v. Sherwood*, 312 U.S. 584, 586 (1941); and that the plaintiff bears the burden of proving an explicit waiver of sovereign immunity, *Ishler v. Internal Revenue*, 237 F. App'x 394, 398 (11th Cir. 2007).

Lyttle alleges in his "Fourth Claim for Relief" that the official capacity defendants discriminated against him based on his claimed mental disability, in violation of the Rehabilitation Act. They did this, he says, by failing to "implement policies and procedures to adequately identify and assess individuals with mental disabilities and to provide those individuals with sufficient legal guidance and protections while in federal custody and subject to interrogation and judicial or quasi-judicial proceedings." Compl. ¶ 163. The official capacity defendants sued in this claim are, in Lyttle's words, "charged with the operation of a Federally-funded government agency under 29 U.S.C. § 794." *Id.* ¶¶ 150-53.

Yet that is exactly why Lyttle's request for damages under § 504 of the Rehabilitation Act cannot be sustained. The Supreme Court has held expressly that the Rehabilitation Act does not waive the government's sovereign immunity from damages for violations of § 504 by a federally-funded entity "that the Federal Government manages itself." *Lane v. Peña*, 518 U.S. 187, 195 (1996); *see United States Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 612 (1986)

(holding that § 504 does not apply to federal programs "'owned and operated' by the United States").  There can be no doubt that the "Federally-funded government agenc[ies]" identified in Lyttle's Rehabilitation Act claim—DHS, EOIR, ICE, and ICE's Office of Detention and Removal, Compl. ¶¶ 150-53—are managed by the government itself.  As such, that portion of his "Fourth Claim for Relief" which seeks monetary relief for a federal agency allegedly discriminating against a disabled person in the administration of its own program is barred by the doctrine of sovereign immunity and should be dismissed under Rule 12(b)(1).  *See Lane*, 518 U.S. at 189-95 (holding that sovereign immunity precluded damages claim under § 504 against Secretary of U.S. Department of Transportation, where plaintiff alleged that, due to diabetes, he was separated from U.S. Merchant Marine Academy, which "the Department itself administers through the Maritime Administration"); *Howard v. Bureau of Prisons*, No. 05-1372, 2008 WL 318387, *4-5 (M.D. Pa. Feb. 4, 2008) (finding sovereign immunity precluded damages claims under § 504 of Rehabilitation Act against employees of Federal Bureau of Prisons in official capacity because government itself manages BOP).[7]

---

[7]  Although Lyttle cites the Fifth Amendment and the INA in Count Four, Compl. ¶¶ 157-58, he clearly relies on the Rehabilitation Act as the sole basis for seeking damages against the official capacity defendants, *id*. ¶ 164.  Even so, sovereign immunity similarly bars damages claims against the United States, its agencies, and its employees in their official capacity for alleged constitutional

B.    **Lyttle Lacks Standing To Pursue Injunctive Relief**

In both Counts 4 and 5, Lyttle requests various types of vague and far-ranging injunctive relief based on the official capacity defendants' alleged failure to "promulgate, implement and maintain adequate safeguards" to verify the citizenship of immigration detainees and to protect immigration detainees with mental disabilities.  *See* Compl. ¶¶ 149-71, p. 60 ¶ 5 ("Prayer for Relief").  This portion of Lyttle's official capacity claims also should be dismissed under Rule 12(b)(1), though for a different reason than his request for monetary relief:  Lyttle lacks standing to obtain injunctive relief.

To establish a "case or controversy" under Article III of the Constitution, an individual must allege that he "has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged conduct.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotations and citation omitted).  A plaintiff seeking injunctive or declaratory relief must prove not only an injury, but a "real and immediate threat of future" and repeated injury in order to satisfy the "injury in fact" requirement.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8

---

violations.  *See Meyer*, 510 U.S. at 478; *Horne v. Soc. Sec. Admin.*, 359 F. App'x 138, 143 (11th Cir. 2010).  Lyttle likewise does not—because he cannot—point to a provision of the INA that "unequivocally" waives the government's sovereign immunity from damages.  *Lane*, 518 U.S. at 187.

(1983). "The injury or threat of injury" cannot be "conjectural or hypothetical."
*O'Shea*, 414 U.S. at 494 (internal quotations and citations omitted). Thus, while
the irreparable-injury requirement may be satisfied by demonstrating a history of
past misconduct, that history must give rise to "an inference that future injury is
imminent." *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010).

Applying these standards here, Lyttle clearly cannot satisfy the case or
controversy requirement of Article III for his injunctive relief claims. This would
require him to show a "real and immediate threat" of once again being interviewed
by ICE, misidentified as a non-citizen, placed in removal proceedings, and ordered
removed. *Lyons*, 461 U.S. at 107 n.8. And that he cannot do. Indeed, Lyttle
readily admits that since April 2009 DHS has recognized that he is a U.S. citizen.
Compl. ¶ 129; Compl. Exh. C. This recognition led DHS to file a motion to
terminate Lyttle's removal proceedings, Compl. Exh. C, and the immigration
judge to issue an order terminating those proceedings *with prejudice*, Exh. J.
These circumstances make it unlikely that Lyttle will once again find himself in
the position of being misidentified as a non-citizen. As a result, the possibility
that Lyttle again would be subjected to removal proceedings is simply too remote
to establish a "case or controversy." *See Florida State Conference of the NAACP
v. Browning*, 522 F.3d 1153, 1162 (11th Cir. 2008) (holding that where a number

of events that are "spatially and temporally indeterminate" must conspire for alleged injury to occur, such injury is too speculative to give rise to standing).

This Court has found in a directly analogous immigration-related case that the plaintiffs lacked standing to pursue injunctive relief against ICE. *See Mancha v. ICE*, No. 06-2650-TWT, 2007 WL 4287766, *2 (N.D. Ga. Dec. 5, 2007) ("The allegations with respect to a policy of discriminating against Latinos do not allege a future injury that is imminent and concrete enough for judicial consideration."). Other courts have held likewise, even where it was alleged that ICE's actions were conducted in conjunction with a discriminatory or otherwise improper policy. *See*, *e.g.*, *Santos v. Frederick Cnty. Bd. of Comm'rs*, No. 09-2978, 2010 WL 3385463, *4 (D. Md. Aug. 25, 2010); *Arias v. ICE*, No. 07-1959, 2008 WL 1827604, *12 (D. Minn. Apr. 23, 2008); *Barrera v. United States Dep't of Homeland Sec.*, No. 07-3879, 2009 WL 825787, *9 (D. Minn. Mar. 27, 2009). This precedent compels the conclusion that Lyttle lacks standing to obtain injunctive relief in this case.[8]

---

[8] In addition, Lyttle's requests for injunctive relief should be denied as too broad. It is axiomatic that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). As the Eleventh Circuit has explained, "a district court abuses its discretion when it drafts an injunction that is unnecessarily broad in scope." *Alley v. United States Dep't of Health & Human Servs.*, 590 F.3d 1195, 1205 (11th Cir. 2009). That would be the case here were the Court to grant Lyttle's wide-ranging requests for equitable relief. Lyttle essentially seeks enhanced safeguards for all mentally disabled individuals in removal proceedings,

**II.**   <u>**Jurisdiction Is Not Proper As To Three Of Lyttle's FTCA Claims**</u>

Turning to Lyttle's claims under the FTCA, that statute provides a "limited waiver of sovereign immunity" from money damages. *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999). The boundaries of that waiver are marked by a series of specific exceptions outlined in the Act, each of which is considered jurisdictional and, like waivers of sovereign immunity in general, must be strictly construed in favor of the United States. *JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1263-64 (11th Cir. 2000). Two such exceptions—the "discretionary function" and "due care" exceptions, *see* 28 U.S.C. § 2680(a)—bar Lyttle's FTCA claims for false imprisonment and IIED, and one of his claims for negligence (Counts 6, 7, and 9).[9]

---

including a system for identifying individuals with mental disabilities in the immigration detention system and appointment of counsel for all mentally disabled persons before the immigration court. Compl. ¶¶ 159-61, 163, 167-69, p. 60 ¶ 5. These requests go far beyond remedying Lyttle's alleged injury and should be rejected as overly broad.

[9]  In fact, another exception to the FTCA—the "foreign country" exception, *see* 28 U.S.C. § 2680(k)—is also relevant here. But because it would not preclude Lyttle's FTCA claims entirely (although it would severely curtail them), it is discussed separately below in the event that the Court does not dismiss such claims altogether. *See infra* Section IV.

A.    **The "Discretionary Function" Exception**

The FTCA preserves the United States' sovereign immunity from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."  28 U.S.C. § 2680(a).  This is true "whether or not the discretion involved be abused."  *Id.*; *see O'Ferrell v. United States*, 253 F.3d 1257, 1267 (11th Cir. 2001) (applying exception even though agents' conduct during interrogation of suspect was "indefensibly gross abuse" of their discretion).

The Supreme Court has developed a two-part test to determine if the conduct in question falls within the discretionary function exception.  First, the conduct must be "a matter of choice for the acting employee."  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  The exception thus "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *Id.*; *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993) (holding that court first must determine if challenged conduct "violated a mandatory regulation or policy that allowed no judgment or choice").  Second, the court must decide if the conduct implicates "considerations of public policy," as the very "purpose of the discretionary function exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social,

economic, and political policy." *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) (internal alterations, quotations, and citations omitted).  But it is not necessary that the employee personally weighed policy considerations before acting (or not); rather, the focus at this stage of the analysis is "on the nature of the actions taken and whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).  As a result, the discretionary function exception protects conduct beyond the policy and planning level:  "'Day-to-day management . . . regularly requires judgment as to which of a range of permissible courses is the wisest.'"  *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997) (alteration in original) (quoting *Gaubert*, 499 U.S. at 325).

Counts 7 and 9 of Lyttle's complaint assert FTCA claims for negligence and IIED, respectively.  Compl. ¶¶ 178-83, 190-96.  They primarily challenge the manner in which ICE and CBP agents "interrogated" Lyttle and investigated his immigration status pending deportation proceedings, including their supposed failure to review "readily available documentation" indicative of his citizenship or provide him "assistance" due to his alleged cognitive limitations, the process used to have him sign sworn statements concerning his citizenship, and the adequacy of

their training and supervision in these matters.  Compl. ¶¶ 94-100, 119-27, 180.[10]
Such conduct falls squarely within the discretionary function exception.

To begin, the way that a law enforcement officer conducts an interrogation
and investigation is inherently discretionary; by necessity it entails judgment and
choice as to objectives, strategies, and means. *See Mesa v. United States*, 123 F.3d
1435, 1438 (11th Cir. 1997); *Diaz v. United States*, No. 99-6374, 2002 WL
31002842, *1 (N.D. Ill. Sept. 3, 2002) (finding that immigration officials'
"determination of [plaintiff's] citizenship was discretionary").[11]  In light of such
discretion, "it must be presumed that the agent's acts are grounded in policy when
exercising that discretion."  *Gaubert*, 499 U.S. at 324.  That presumption is borne
out in the particular context and circumstances of this case.

---

[10]  Counts 7 and 9 (along with the false imprisonment claim in Count 6) also
appear to challenge the mere fact of Lyttle's detention and deportation.  That issue
is discussed separately below in Section II-B.

[11]  Lyttle himself actually bolsters this conclusion.  He alleges that
defendant Hayes issued a memorandum on November 6, 2008 (just after Lyttle
had arrived at the SDC), to provide guidance for ICE agents on the reporting and
investigation of claims to U.S. citizenship.  Compl. ¶ 63.  Although this
memorandum contains some baseline requirements, it "did not provide," in
Lyttle's own words, "any mandatory procedures or standards for the type of
investigation that deportation officers were required to undertake in order to
investigate and authenticate a claim of U.S. citizenship."  *Id*. ¶ 72; *see id*. (alleging
that under the memo an ICE officer "'may' (not *must*)" take certain types of
investigative measures and that "there is no guidance for what type or level of
investigation must be conducted").

ICE and CBP are tasked with enforcing federal immigration laws, which involves ensuring that individuals suspected of being in the country illegally are removed. *See* 6 U.S.C. §§ 251-52, 542 (note). In carrying out this task, ICE and CBP (like all federal agencies) operate with limited resources. *Cf. Hughes v. United States*, 110 F.3d 765, 768-69 (11th Cir. 1997). They therefore must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship. *Cf. Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999) (explaining that at each stage of the initiation or prosecution of the deportation process the Executive "has discretion to abandon the endeavor" and often exercises "that discretion for humanitarian reasons or simply for its own convenience").

With these and similar considerations in mind, courts have found that the discretionary function exception bars FTCA claims analogous to those brought by Lyttle. For instance, the Eleventh Circuit has held that an allegedly coercive interrogation, during which it was claimed that FBI agents "predict[ed] death in the electric chair if [one of the plaintiffs] failed to confess," could not support liability under the FTCA in light of the discretionary function exception. *O'Ferrell*, 253 F.3d at 1267. As the court of appeals explained: "Just how law enforcement agents are to conduct interrogations would appear to be a

-20-

paradigmatic example of a discretionary function.  The process is one that

involves elements of judgment and choice—the central ingredients of discretion."

*Id*.  The Eleventh Circuit also has applied the discretionary function exception to a

claim that DEA agents "negligently or recklessly failed to cease detaining and

questioning" the plaintiffs after realizing they had arrested the wrong person.

*Mesa*, 123 F.3d at 1438; *accord Williams v. United States*, 314 F. App'x 253, 257

(11th Cir. 2009) (stating that "because it is the mandatory duty of law enforcement

agents to enforce the law, decisions as to how to best fulfill that duty are protected

by the discretionary function exception"); *Smith v. United States*, 375 F.2d 243,

248 (5th Cir. 1967) (holding that § 2680(a) exempts government from liability for

decisions "made during the investigation or prosecution of offenses"); *Lippman v.

City of Miami*, 622 F. Supp. 2d 1337, 1346 (S.D. Fla. 2008) (observing that

"courts have held that the method by which law enforcement officials execute

[their] functions [is] grounded in policy considerations and thus subject to the

discretionary function exception").

　　These same principles hold true in the immigration context.  The plaintiff in

*Nguyen v. United States*, 65 F. App'x 509, 2003 WL 1922969 (5th Cir. 2003) (per

curiam), was subjected to deportation proceedings and remained in federal custody

for fifteen months before being released.  He then sued under the FTCA, alleging

among other things that the immigration officials were negligent in failing to "determine from various documents that [he] was entitled to derivative citizenship." *Nguyen*, 2003 WL 1922969, at *2.  The Fifth Circuit held this was essentially a claim that immigration agents "failed to adequately perform a discretionary duty, which falls squarely within the discretionary function exception." *Id*.  It also noted that "[d]ecisions to investigate, how to investigate and whether to prosecute generally fall within this exception." *Id*. at *1.[12]

Applying the above precedent here, the discretionary function exception clearly forecloses a large part of Lyttle's FTCA claims.  The ICE and CBP agents in this case exercised "choice and judgment," *Gaubert*, 499 U.S. at 331, in gathering and reviewing the relevant evidence, evaluating whether Lyttle was able to understand what was happening during his interviews, and deciding whether to detain him, initiate removal proceedings against him, and release him at the airport.  Lyttle's conclusory allegations about negligent supervision and training,

---

[12]   *Accord Bernado v. United States*, No. 02-0974, 2004 WL 741287, *3 (N.D. Tex. Apr. 5, 2004) (holding that discretionary function exception precluded claim that immigration officials were "negligent in failing to independently investigate [plaintiff's] eligibility for derivative citizenship"); *Diaz*, 2002 WL 31002842, *1 (applying discretionary function exception to FTCA false imprisonment claim based on immigration officials' detention, allegedly coercive interrogation, and expedited removal of plaintiff who, while trying to pass through customs at airport, "insist[ed]" he was U.S. citizen and had "presented original documentation sufficient to show this").

and "creating and/or sanctioning" policies concerning detention, interrogation, and deportation, Compl. ¶¶ 95-98, 180, are even more readily subject to the discretionary function exception.  *See Gaubert*, 499 U.S. at 325 ("Discretionary conduct is not confined to the policy or planning level."); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.") (collecting cases); *O'Ferrell v. United States*, 968 F. Supp. 1519, 1535-36 (M.D. Ala. 1997) (dismissing negligent supervision claim based on discretionary function exception), *aff'd*, 253 F.3d 1257 (11th Cir. 2001).  This Court therefore should dismiss most of Counts 7 and 9 for lack of subject matter jurisdiction based on the discretionary function exception.

## B.    The "Due Care" Exception

The rest of Counts 7 and 9, and all of Count 6 (which asserts a false imprisonment claim), are predicated on the mere fact that immigration agents in Georgia detained Lyttle pending his removal proceedings and then physically deported him.  Compl. ¶¶ 173, 180, 191.  As such, this portion of Lyttle's FTCA claims is barred by the FTCA's "due care" exception.

Complementing the discretionary function exception is the "due care" exception, which prohibits claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  This part of § 2680(a) "prevents the United States from being held liable for actions of its officers undertaken while reasonably executing the mandates of a statute."  *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).  For the due care exception to apply, there must be a statute or regulation that "specifically proscribes a course of action for an officer to follow" and the officer must have "exercised due care in following the dictates of that statute or regulation."  *Id*. at 652.

In this case, as in *Welch*, Lyttle was detained "under the mandate of [8 U.S.C.] § 1226(c)(1)(B)."  *Id*.; Exhs. C, D.  "Once [Lyttle] was deemed deportable" pursuant to this provision, the "decision to detain him was statutorily required."  *Welch*, 409 F.3d at 652; *see Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (explaining that § 1226(c) "mandates detention" of individuals charged as criminal aliens "during removal proceedings").  Likewise, immigration officers are statutorily required to detain and remove an alien once the alien "is ordered removed."  8 U.S.C. § 1231(a)(1)(A).  Because there is no allegation in this case that an immigration officer "deviated from the statute[s'] requirements," *Welch*,

409 F.3d at 652, the due care exception scotches Lyttle's FTCA claims to the

extent they depend on the fact of his detention in and deportation from Georgia.

*See id*. (affirming dismissal under Rule 12(b)(1) of FTCA false imprisonment

claim based on due care exception where plaintiff was detained pursuant to §

1226(c)(1)(B) for 422 days).[13]

## III.   Lyttle's FTCA Claims Should Be Dismissed As A Matter Of Law

In addition to the jurisdictional hurdles they present, Lyttle's FTCA causes

of action are substantively flawed too.  The United States is liable under the FTCA

only if "a private person[] would be liable to the claimant in accordance with the

law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), and

only "in the same manner and to the same extent as a private individual under like

circumstances" would be liable, *id.* § 2674.  The FTCA thus does not "create new

causes of action" but instead "provide[s] redress for ordinary torts recognized by

---

[13]  In *Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009), the Eleventh
Circuit held that the discretionary function exception never applies to the torts listed
in the so-called "law enforcement proviso" of 28 U.S.C. § 2680(h).  *See
Nguyen*, 556 F.3d at 1252-53.  The only one of those relevant here is false
imprisonment (since negligence and IIED are not included in the proviso, *see* 28
U.S.C. § 2680(h)).  Given that *Nguyen* did not address the due care exception,
however, that exception would remain a valid ground for dismissing Lyttle's false
imprisonment claim.  Were the holding of *Nguyen* nevertheless expanded to
encompass the due care exception, Lyttle's inability to satisfy all the elements of
the false imprisonment tort under Georgia law acts as an independent basis for
dismissal of Count 6.  *See infra* Section III-A-1.

state law." *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991).  For the

reasons explained below, Lyttle has not alleged and cannot prove valid claims for

false imprisonment, negligence, or IIED under the laws of Georgia.  The Court

therefore should dismiss his FTCA claims under Rules 12(b)(6) and 56.

### A.    Counts 6, 7, And 9 Should Be Dismissed Under Rule 12(b)(6)

Dismissal is required under Rule 12(b)(6) when a plaintiff does not "plead

sufficient factual matter to show" an entitlement to relief.  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1948 (2009).  Only a "plausible claim for relief survives a motion to

dismiss," and a claim is plausible only when the well-pled factual allegations

allow "the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Id.* at 1949-50.  Below we explain why Counts 6 (false

imprisonment), 7 (negligence), and 8 (IIED) of Lyttle's complaint fail to state

claims upon which relief can be granted.

### 1.    The False Imprisonment Claim Fails Because Lyttle's Detention Was Pursuant To Procedurally Valid Process

In his "Sixth Claim for Relief," Lyttle seeks to hold the United States liable

for false imprisonment on the theory that the Georgia immigration officials

"obtain[ed] custody" of him from the North Carolina officials, and held and

detained him "for an appreciable period of time."  Compl. ¶ 173.  The fact that

valid legal process was used throughout Lyttle's removal proceedings, however, defeats this claim as a matter of law.

False imprisonment in Georgia is defined as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."  Ga. Code Ann. § 51-7-20.  But as courts in this State have noted, "the law has always made a fundamental distinction between a detention effectuated pursuant to process and detention which is not predicated on process." *Williams v. Smith*, 348 S.E.2d 50, 52 (Ga. Ct. App. 1986).  When a detention "is predicated upon *procedurally valid process*, false imprisonment is *not* an available remedy, regardless of the motives upon which the process was secured."  *Id*. at 53; *see Grist v. White*, 80 S.E. 519, 521 (Ga. Ct. App. 1914) (explaining that false imprisonment action "cannot be maintained where the process is valid, *no matter how corrupt may be the motives of the person suing out the process or how unfounded the imprisonment may be*") (emphasis added).

In this case, Lyttle acknowledges, as he must, that immigration officials issued several types of legal process to initiate, and as part of, his deportation proceedings.  Compl. ¶¶ 46-50, 62, 93, 126; Exhs. B-F, H-I.  There can be no question that this process was procedurally valid, and Lyttle does not allege

otherwise.  As a matter of Georgia law, therefore, a false imprisonment claim

cannot lie against the United States.[14]

> **2.    The Negligence Claim In Count 7 Fails Because Lyttle
>         Cannot Establish That A Private Person Would Be Liable
>         In Like Circumstances**

As alluded to above, the FTCA makes the United States liable only if state

law "would impose liability on private persons or corporations under similar

circumstances."  *Rayonier, Inc. v. United States*, 352 U.S. 315, 318 (1957); *see* 28

U.S.C. § 2674 (imposing tort liability on United States "in the same manner and to

the same extent as a private individual under like circumstances").  Where, as

here, a "comparable private party" would not be liable for negligence, then the

United States cannot be liable under the FTCA.  *Pate v. Oakwood Mobile Homes,*

*Inc.*, 374 F.3d 1081, 1084-87 (11th Cir. 2004) (reversing judgment against United

States on FTCA negligence claim based on government's alleged failure to

enforce compliance with workplace safety regulations because private person

would not be liable in analogous circumstances).

-----

[14]  Lyttle's reliance on the fact that he was "physically expell[ed]" from the United States as part of his false imprisonment claim, Compl. ¶ 173, is illogical: his removal actually ended his detention, which is an essential element for false imprisonment, *see* Ga. Code Ann. § 51-7-20.

In Count 7 of his complaint, Lyttle asserts that the Georgia immigration officials "breached their duty of reasonable care by negligently acting or failing to act in such a way that resulted in [his] wrongful detention and deportation." Compl. ¶ 179.  By this he appears to mean that the Georgia immigration officials negligently investigated his claim of citizenship and failed to provide him "with assistance" due to his alleged "mental disabilities" during his interviews and before letting him sign sworn statements concerning his citizenship.  *Id.* ¶ 180.

When "assessing the Government's liability under the FTCA in the performance of activities which private persons do not perform," *e.g.*, enforcing the nation's immigration laws, a court should "look to the state-law liability of private entities, not to that of public entities" for a possible common law analogue. *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotations and citation omitted).  A canvass of Georgia law, however, uncovers no precedent holding private parties liable in circumstances like those at issue in Lyttle's "Seventh Claim for Relief."

The only conceivable analogy to the situation presented here is one in which a private person "voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection," thereby creating a duty to protect the other "against unreasonable risk of physical harm."

Restatement (Second) of Torts §§ 314A(1), (4) (1965).  But we are unaware of any Georgia court adopting this particular provision of the Restatement concerning someone who "voluntarily takes custody of another" (as opposed to someone who is "required by law" to take custody of another).  *Cf. Thomas v. Williams*, 124 S.E.2d 409, 413 (Ga. Ct. App. 1962) (recognizing "general rule . . . that in many circumstances a person has no legal duty to assist another human being who is in danger" but finding that jailor owes duty "to exercise ordinary diligence to keep his prisoner safe and free from harm"); *Rasnick v. Krishna Hospitality, Inc.*, 690 S.E.2d 670, 674-75 (Ga. Ct. App. 2010) (stating that portion of § 314A concerning innkeepers "has not been adopted into Georgia's common law" and refusing to extend common law to impose tort duty on innkeeper-defendant).

More importantly for present purposes, the duty imposed by this rule is to protect "against unreasonable risk of physical harm."  Restatement (Second) of Torts § 314A(1).  While that duty may have some bearing on Lyttle's other negligence claim regarding his medical care (Count 8, discussed below), it has no relevance to his negligence claim regarding his detention (Count 7).  We again are aware of no case in Georgia imposing a duty on private individuals who have voluntarily taken custody of another to conduct any kind of investigation into that person, ensure that he understands his rights, or provide assistance to him during

an "interrogation" or before signing legal forms.  Because Georgia law therefore

would not hold a private citizen liable under such circumstances, the United States

cannot be held liable under the FTCA.  *Cf. Howell*, 932 F.2d at 917-20 (finding

United States not liable for alleged negligence of FAA inspector in failing to

ground plane, issue notice, or initiate investigation because Georgia law would not

impose duty on private party in similar circumstances).

### 3.   The IIED Claim Fails Because Lyttle Has Not Alleged Extreme And Outrageous Conduct

Lyttle's "Ninth Claim for Relief," an FTCA claim for intentional infliction

of emotional distress, also fails as a matter of law.  To succeed on an IIED claim in

Georgia, a plaintiff bears a "stringent" burden to demonstrate that:  (1) the conduct

giving rise to the claim was intentional or reckless; (2) the conduct was extreme

and outrageous; (3) the conduct caused emotional distress; and (4) the emotional

distress was severe.  *Frank v. Fleet Fin., Inc. of Georgia*, 518 S.E.2d 717, 720 (Ga.

Ct. App. 1999).  Regarding the second element, the defendant's conduct "must be

so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community."  *Id*.

(internal quotations and citations omitted).  Whether the conduct at issue rises to

that level is a question of law.  *Willis v. United Family Life Ins.*, 487 S.E.2d 376,

382 (Ga. Ct. App. 1997) (affirming grant of motion to dismiss as to IIED claim because plaintiff had not alleged "outrageous" conduct).

Lyttle has not come close to pleading conduct that is sufficiently extreme and outrageous to sustain an IIED claim.  For starters, the Georgia immigration officials were statutorily required (as discussed above in Section II-B) to detain him pending removal proceedings.  *See* 8 U.S.C. §§ 1226(c), 1231(a)(1)(A).  And Lyttle himself admits that his immigration case was reclassified from an expedited removal to a "Notice to Appear" as soon as he made a claim of citizenship during his interview with defendant Collado just after arriving at the SDC.  Compl. ¶¶ 58-62; Exh. F.  This ensured that his immigration status would be determined by an immigration judge.  Compl. ¶¶ 61-62; Exh. F.  Lyttle further admits that there was at the time "no guidance for what type or level of investigation must be conducted" regarding a claim of citizenship, Compl. ¶ 72, so any shortcomings in the investigation of Lyttle's citizenship (assuming there were shortcomings) could hardly be deemed as exceeding "all bounds of decency."  *Frank*, 518 S.E.2d at 720.  It also was reasonable for CBP agents at the Atlanta airport, in light of the immigration judge's existing removal order against Lyttle, to detain him while investigating his claim of citizenship, and release him after just two days.  Compl. ¶¶ 119-28.  Finally, while Lyttle hyperbolizes that one of the Georgia immigration

-32-

officials (defendant Mondragon) "coerced and manipulated" him into signing a sworn statement concerning his citizenship, *id*. ¶ 78, this is a mere conclusory assertion that is not entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1950.  And what that assertion amounts to is, at worst, that defendant Mondragon (who is not alleged to be a trained mental health care provider) perhaps misjudged Lyttle's capacity to understand the proceedings.  Compl. ¶ 77-78.

In short, Lyttle merely alleges that the Georgia immigration officials performed their usual duties in interviewing, investigating, and detaining him pending deportation proceedings that were commenced in North Carolina. *See* Compl. ¶¶ 58-62, 75-78, 92-93, 119-26.  He certainly has not pled "sufficient factual matter to show," *Iqbal*, 129 S. Ct. at 1948, that those officials engaged in "extreme and outrageous" conduct to maintain an IIED cause of action.  *Cf. Conley v. Dawson*, 572 S.E.2d 34, 38 (Ga. Ct. App. 2002) (finding that alleged conduct of police officer assigned to investigate fatal car accident, whom plaintiff accused of conspiring with other defendants to commit fraud and deliberately excluding information from police report that was inculpatory of co-defendant, was not sufficiently extreme and outrageous to sustain IIED claim); *Miraliakbari v. Pennicooke*, 561 S.E.2d 483, 487 (Ga. Ct. App. 2002) (finding that conduct of defendant-employer in refusing to follow company procedures requiring her to

investigate plaintiff-employee's claim of medical emergency and threatening to fire plaintiff did "not rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress," despite the existence of a "special relationship in which one person has control over another, such as the employer-employee relationship").

**B.     Summary Judgment Should Be Entered On Count 8**

Lyttle predicates his other FTCA negligence claim (Count 8) on his allegation that, on November 17, 2008, unnamed PHS employees "act[ed] in such a way that resulted in the administration of sixty Glucophage pills to [him] while in ICE custody."  Compl. ¶ 185; *see id.* ¶ 81.  Because the incontrovertible evidence proves that is not the case, and that Lyttle's own actions were an intervening cause, summary judgment should be entered in favor of the United States on this claim.

Summary judgment must be entered where the admissible evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of showing

through materials on file that there are no genuine issues of material fact for trial. *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party "of coming forward with sufficient evidence on *each element* that must be proved." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (1990). In opposing a motion for summary judgment, a "party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986).

The evidence in this case shows that there is no genuine issue of fact on two key points: (1) PHS employees did not provide Lyttle "with approximately 60 tablets of Glucophage" on or about November 17, 2008, or even allow him to keep any amount of such medication on his person, and (2) Lyttle did not try to commit suicide but instead stated that he tried to overdose because he was "bored." As described above and in the attached Statement of Facts, Lyttle's medical records demonstrate that he received only two Metformin tablets per day (including the day before he was taken to an outside hospital), that he was required to obtain those tablets by standing in the pill line, and that he was not even allowed to keep those tablets on his person. SMF ¶¶ 1-5; Exhs. K-1– K-2, L. Those records also show that Lyttle made clear, repeated, and contemporaneous statements to various health care professionals that he was not suicidal and that he tried to overdose, not

to "kill [him]self," but to have "fun" and "get high" (all of which constitute admissions by a party-opponent, *see* Fed. R. Evid. 801(d)(2)).  SMF ¶ 6; Exh. K-3.

In light of the evidence on the above two issues, summary judgment is appropriate on Lyttle's "Eighth Claim for Relief" for two corresponding reasons. First, the record indisputably refutes Lyttle's allegation that PHS employees gave him sixty tablets of Glucophage all at once on November 17, 2008 (or any other day), which is the *sole* factual predication for this particular claim.  Compl. ¶¶ 81, 185.  The United States therefore cannot be liable for negligence because it in fact did not breach any duty it may have owed Lyttle.  *Cf. City of Douglasville v. Queen*, 514 S.E.2d 195, 198 (Ga. 1999) (finding summary judgment proper on negligence claim based on evidence showing defendant did not breach duty to plaintiff); *Traicoff v. Withers*, 544 S.E.2d 177, 180 (Ga. Ct. App. 2000) (same); *Modesitt v. Waffle House, Inc.*, 444 S.E.2d 412, 414 (Ga. Ct. App. 1994) (finding summary judgment proper where evidence showed defendant "acted reasonably in fulfilling its duty toward" plaintiff).  Second, Lyttle's self-proclaimed and deliberate attempt to injure himself, by way of an overdose, for the sole purpose of having "fun" and "get[ting] high" acts as an intervening cause that also relieves the United States of liability for negligence.  *Cf. Harvey v. Nichols*, 581 S.E.2d 272, 278 (Ga. Ct. App. 2003) (holding that inmate's suicide was intervening cause

in negligence action where there was no evidence that inmate "was in a rage or frenzy or had an uncontrollable impulse when he took his life" but instead "was calm and controlled and appears to have known what he was doing"); *Dry Storage Corp. v. Piscopo*, 550 S.E.2d 419, 420-21 (Ga. Ct. App. 2001) (finding on summary judgment that suicide was intervening cause in negligence action where decedent "was not enraged, frenzied or under an uncontrollable impulse" but instead "was calm and deliberate" and "appears to have been in control of himself and to have known exactly what he was doing").  The United States is therefore entitled to summary judgment on Count 8 of Lyttle's complaint.

## IV.  Jurisdiction Over Lyttle's FTCA Claims Is Limited By The Foreign Country Exception

Assuming the Court does not dismiss all of Lyttle's FTCA claims in their entirety for the reasons discussed above, it nevertheless should find that any surviving FTCA claim would allow recovery for only those injuries that Lyttle allegedly suffered within the United States.  This is an unavoidable consequence of the FTCA's foreign country exception.

In addition to the discretionary function and due care exceptions, another of the enumerated exceptions found in the FTCA is that which preserves the United States' sovereign immunity from tort liability with respect to "[a]ny claim arising

in a foreign country."  28 U.S.C. § 2680(k).  The Supreme Court has interpreted the "straightforward language of the foreign country exception" to mean that it "bars all claims based on any injury suffered in a foreign country, *regardless of where the tortious act or omission occurred*."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 701, 712 (2004) (emphasis added).

This understanding of the foreign country exception is based on several considerations.  First is the language of the statute itself.  Unlike other exceptions found in the FTCA, *see* 28 U.S.C. §§ 2680(a), (e), the foreign country exception does not use the phrase "act or omission."  *See Sosa*, 542 U.S. at 711 n.9.  Thus, reading that phrase into the foreign country exception, so that a claim would be barred only when the act or omission giving rise to the claim occurred in a foreign country, would contradict the plain terms of the act.  *See id.*

Second, the "common usage" of the phrase "arising in," at the time of the FTCA's enactment, referred to the "jurisdiction in which injury was received."  *Id.* at 704-05 (internal quotations and citation omitted); *see id.* at 711.  There is thus "good reason . . . to conclude that Congress understood a claim 'arising in a foreign country' to be a claim for injury or harm occurring in a foreign country." *Id.* at 704 (quoting 28 U.S.C. § 2680(k)).

Third, the "dominant principle in choice-of-law analysis for tort cases" when Congress passed the FTCA was to apply "the law of the place where the injury occurred." *Id.* at 705. But because the "object" of the foreign country exception is "to avoid application of substantive foreign law," and because the place of harm or injury is "the fact that would trigger application of foreign law to determine liability," it is evident that Congress "used the modifier 'arising in a foreign country' to refer to claims based on foreign harm or injury." *Id.* at 707-08.

In this case, it appears Lyttle seeks damages against the United States based in large part on harm that allegedly befell him during the four months he spent in Central America, after he was removed from the United States. *See* Compl. ¶¶ 102-17. Under the "straightforward language of the foreign country exception," *Sosa*, 542 U.S. at 701, however, Lyttle may not recover for "any injury suffered in a foreign country," *id.* at 712. This is so even though the allegedly tortious acts or omissions giving rise to such foreign injuries occurred within the United States. *Id.* at 697-99 (finding foreign country exception barred FTCA false arrest claim for arrest that occurred in Mexico even though arrest warrant was issued in United States). The Court therefore should find, at a minimum, that Lyttle's FTCA claims are jurisdictionally limited by the foreign country exception, to the extent they depend on harm or injury Lyttle may have experienced while outside the United

States.  As a corollary, it further should find that Lyttle's damages (if any) under

such claims must be based solely on injuries he can prove occurred while in

federal custody and inside the United States.

## <u>CONCLUSION</u>

For the reasons stated above, the United States and the official capacity

defendants respectfully request that the Court grant their motion to dismiss and for

summary judgment as to all of the claims against them in Lyttle's complaint.

Respectfully submitted,

TONY WEST
Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

/s/ James R. Whitman
JAMES R. WHITMAN
Trial Attorney
D.C. Bar No. 987694
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel:          (202) 616-4169
Fax:          (202) 616-4314
E-mail:       james.whitman@usdoj.gov

DAVID G. CUTLER
Trial Attorney, Torts Branch

-40-

DAVID J. KLINE
Director
Office of Immigration Litigation
District Court Section

SAMUEL P. GO
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section

NEELAM IHSANULLAH
Trial Attorney
Office of Immigration Litigation
District Court Section


SALLY QUILLIAN YATES
United States Attorney

SHARON D. STOKES
Assistant U.S. Attorney
Georgia Bar No. 227475
U.S. Attorney's Office
Northern District of Georgia
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303
Tel:          (404) 581-6000
Fax:          (404) 581-6150
E-mail:       Sharon.stokes@usdoj.gov

Attorneys for the United States, Eric H.
Holder, Janet Napolitano, Thomas G. Snow,
and John T. Morton

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the document to which this certificate is attached has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1 for documents prepared by a computer.

/s/ James R. Whitman
JAMES R. WHITMAN
Trial Attorney