IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARK DANIEL LYTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. 1:10-CV-3302-CAP |
| UNITED STATES OF AMERICA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF MARK DANIEL LYTTLE'S
RESPONSE IN OPPOSITION TO UNITED STATES' AND
OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT**

Plaintiff Mark Daniel Lyttle ("Plaintiff" or "Mr. Lyttle") files this Response in Opposition to United States' and Official Capacity Defendants' ("OC Defendants") Motion to Dismiss and for Summary Judgment.

In their Motion to Dismiss, OC Defendants argue that "the deportation of a citizen is unfortunate," (OC Defs' Br. at 1) but that a known United States citizen with a known mental impairment who was wrongfully detained and then deported to Mexico with three dollars and a prison suit has no legal remedy whatsoever. As set forth herein, OC Defendants' argument assumes disputed facts before discovery has even begun, and it flies in the face of the controlling legal authorities. Their Motion to Dismiss should be denied.

# BACKGROUND

Mark Lyttle is a 33-year old United States citizen born in Rowan County, North Carolina. (Compl., ¶ 7.) He was raised by his adoptive parents, Thomas Lyttle and Jeanne Lyttle, along with four siblings, two of whom are actively serving in the United States Military. (*Id.*, ¶¶ 7, 28, 117.) Mr. Lyttle has a Social Security Number, a birth certificate, and official adoption records. (*Id.*, ¶¶ 28, 44, Exs. A, B.) Yet, on December 18, 2008, Mr. Lyttle was escorted by federal ICE agents from Stewart Detention Center in Lumpkin, Georgia to the U.S-Mexico border in Hidalgo, Texas, where he was ordered to cross the border into Mexico on foot. (*Id.*, ¶ 101.) He spoke no Spanish, had no money, and until that point, had never been outside the United States. (*Id.*, ¶¶ 5, 7.)

Mr. Lyttle spent the next four months wandering the streets of Mexico, Honduras, Nicaragua and Guatemala. (*Id.*, ¶¶ 102, 111.) Throughout his odyssey, Mr. Lyttle would be arrested and incarcerated numerous times on the grounds that he could not produce evidence of his identity or citizenship. (*Id.*, ¶ 115.) Mr. Lyttle suffered severe physical abuse at the hands of prison guards in Honduras. (*Id.*, ¶ 113.) Ultimately, Mr. Lyttle found his way to Guatemala where he managed to locate the U.S. Embassy and an embassy employee who was willing to listen to Mr. Lyttle's remarkable story. (*Id.*, ¶ 116.) With the aid of the U.S. Embassy

employee in Guatemala, Mr. Lyttle was put in touch with his family in the U.S. who arranged for his return. (*Id.*, ¶ 116.)

That Mr. Lyttle survived his 4-month ordeal in Mexico and Central America is all the more astonishing given that he is mentally disabled. (*Id.*, ¶¶ 30-32.) Mr. Lyttle in fact has a long and well-documented history of significant mental and cognitive disorders that resulted in his near constant institutionalization since adolescence. (*Id.*, ¶ 30.) Mr. Lyttle is barely literate and struggles with basic cognitive functions such as verbal expression, memory and the capacity to comprehend everyday events. (*Id.*, ¶¶ 30-33.) It is due to his mental disability that Mr. Lyttle was unable to effectively resist the coercive interrogations of ICE agents who apprehended Mr. Lyttle in the fall of 2008 and incorrectly identified Mr. Lyttle as "Jose Thomas," a citizen of Mexico unlawfully in the United States. (*Id.*, ¶¶ 37-38.)

Mark Lyttle was not deported because of a good faith misjudgment by government officials, or due to some well-intentioned accident. Rather, as set forth in ample detail in his Complaint, Mr. Lyttle's removal was the product of a determined effort on the part of numerous state and federal officials to remove Mr. Lyttle from the United States in violation of his constitutional rights. Throughout his detention and removal proceedings, Defendants disregarded, ignored and suppressed facts and evidence that should have prevented such a result.

As detailed in Plaintiff's Argument section, OC Defendants' arguments are based on a highly selective, incomplete and in some instances inaccurate characterization of the facts alleged in Mr. Lyttle's Complaint. But accepting the well-pleaded allegations in Mr. Lyttle's Complaint at face value, as this Court must at the pleading stage, Defendants knowingly deported a U.S. citizen whom they knew to be mentally impaired, despite his protests, and despite clear objective evidence that established Mr. Lyttle's citizenship.

## ARGUMENT AND CITATION OF AUTHORITY

I.     **Jurisdiction Is Proper As To Plaintiff's Official Capacity Claims.**

### A. Mr. Lyttle Concedes That Sovereign Immunity Precludes His Claim For Damages Against The Official Capacity Defendants Under § 504 Of The rehabilitation Act.

Although Section 504 of the Rehabilitation Act appears to provide for the recovery of damages by its express incorporation of the remedies afforded under Title VI of the Civil Rights Act of 1964, (*see* 29 U.S.C. § 794a(a)(2)), OC Defendants correctly cite controlling Supreme Court authority holding that "the Rehabilitation Act does not waive the government's sovereign immunity from damages for violations of § 504 by a federally-funded entity 'that the Federal Government manages itself.'" (OC Defs' Br. at 11 (citing *Lane v. Pena*, 518 U.S. 187, 195 (1996).) Accordingly, Mr. Lyttle agrees to withdraw his claim for

damages against the OC Defendants as set forth in his Fourth Claim for Relief, but maintains his right to injunctive relief as set forth below.

### B. Plaintiff Has Standing to Pursue Injunctive Relief.

On pages 13-15 of their Brief, OC Defendants argue that Mr. Lyttle lacks standing to pursue injunctive relief because there is not a risk that he will again be misidentified as a non-citizen and placed in removal proceedings.   On the contrary, Mr. Lyttle has established standing for injunctive relief by alleging "a sufficient likelihood that [he] will suffer in the future from the actions sought to be enjoined" in at least three ways. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (internal quotation omitted).

First, Mr. Lyttle establishes standing because he faces targeting based on his mental disabilities, rather than any volitional, illegal behavior.  While the government cites *Lyons* to argue that standing is improper, the Eleventh Circuit has explicitly distinguished *Lyons* in situations where government policies target and harm individuals with mental disabilities.  *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) (finding standing for class of individuals with mental disabilities because they could not, by their own volition, avoid an allegedly harmful government detention policy: "[plaintiff] is at risk of being detained in jail . . . because [of] his mental condition"); *Church*, 30 F.3d at 1335 (finding standing for individuals with mental disabilities who were allegedly targeted by city police for

harassment and detention).  Mr. Lyttle falls squarely within this line of cases.  He alleges that Defendants target him because of his mental disabilities—not because of volitional behavior on his part.  (Compl., ¶¶ 51, 94, 95.)  Mr. Lyttle's mental disabilities mean that he cannot avoid the government's coercive, discriminatory practice.  *Id.*  Thus, under Eleventh Circuit precedent, *Lyons* does not control in this situation.

The immigration cases OC Defendants cite are inapplicable because they deal with isolated, one-time incidents.  A plaintiff establishes standing by showing that he was harmed on multiple occasions.  *See Nicacio,* 797 F.2d at 702 ("[t]he possibility of recurring injury ceases *to be speculative when actual repeated incidents are documented*") (emphasis added), *and Nat'l Cong. for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 *on reconsideration in part*, 191 F.R.D. 52 (S.D.N.Y. 1999) ("they have been victimized by these unconstitutional practices repeatedly . . . *this alone establishes that plaintiffs face a realistic threat of future harm*") (emphasis added).  In contrast, every single one of the cases cited by OC Defendants involved isolated, one-time-only illegal behavior by the defendants.  *See Mancha v. Immigration & Customs Enforcement*, 2007 WL 4287766 (N.D. Ga. Dec. 5, 2007) at *2 ("[t]here is no claim by the Plaintiffs that anything similar has happened here in Georgia."); *Santos v. Frederick County Bd. of Com'rs*, No. 09-2978, 2010 WL 3385463, at *4 (D. Md. Aug. 25, 2010),

*Barrera v. United States Dep't of Homeland Sec.*, No.07-3879, 2009 WL 825787, at *9 (D. Minn. Mar. 27, 2009); *Arias v. ICE*, No. 07-1959, 2008 WL 1827604, at *12 (D. Minn. Apr. 23, 2008) (*accord*). This case does not deal with a one-time only raid. Instead, Mr. Lyttle faced coercion and discrimination on multiple occasions. (Compl. ¶¶ 51, 58, 75, 119.) Accordingly, Mr. Lyttle's unfortunate history of repeated exposure to the Defendants' harms supports his standing.

Mr. Lyttle additionally establishes standing because Defendants have not fixed the mistakes that led to Mr. Lyttle's repeated detentions, interrogations, and deportations. While Mr. Lyttle concedes that DHS terminated the last round of removal proceedings, nowhere in OC Defendants' Motion does it address whether DHS' records or databases have been fixed. Nowhere does it claim to have corrected the illegal policy of exposing individuals with mental disabilities to coercive interrogations. (Compl. ¶ 181.) On the contrary, the very ICE agents who held Mr. Lyttle and threatened to deport him upon his return to the United States in April 2009 claim that they could disregard his validly issued U.S. passport and official adoption records because an immigration judge had previously found Mr. Lyttle to be an alien subject to removal. (IC Defs' Br. at 36, n.20.) In the absence of unequivocal evidence demonstrating, at a minimum, that Mr. Lyttle's record, including any file associated with an alien-number, has been permanently expunged, ICE agents and CPD officers running a search on Mr.

Lyttle in the future might find the same information of prior removal orders that, under the rational advanced by IC Defendants, would justify Mr. Lyttle's detention yet again.

At the very least, dismissal for lack of standing is inappropriate at this stage of litigation because it requires factual determinations about the nature of the harm and risk of its recurrence. *See Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 879 (11th Cir. 2000). In analyzing standing, a district court should resolve factual disputes at trial or at a pretrial evidentiary hearing. *Steele v. National Firearms Act Branch,* 755 F.2d 1410 (11th Cir.1985). OC Defendants assert that they have solved the problem and it is therefore unlikely to recur (Defs' Br. at 14), but the Complaint alleges that ICE still refuses to implement specific safeguards that will prevent Mr. Lyttle from experiencing future harm. (Compl. ¶¶ 72, 163, 165, 169, and 170). Thus, at the very least, material facts central to standing continue to be in dispute, so dismissal is inappropriate[1].

Finally, contrary to OC Defendants' assertion, the relief requested meets the specificity requirement for injunctions. While an injunction commanding a party to simply obey the law is too broad, *Payne v. Travenol Laboratories, Inc.*, 565

---

[1] At this stage of proceedings, the facts alleged in the Complaint must be taken to be true. *Bischoff*, 222 F.3d at 878. Further, "when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing." *Id.*

F.2d 895, 898 (5th Cir. 1978), Mr. Lyttle's Complaint here goes beyond such vague requests. The *Payne* plaintiffs sought an injunction ordering defendants to stop discriminating based on race, and the court rightfully termed this an injunction to obey the law. Here, Mr. Lyttle requests specific safeguards to ensure that he will not be harmed in the future. (*See* Compl. ¶ 160, 161, p. 60 (requesting a right to attorney during immigration proceedings involving individuals with mental disabilities, safeguards during intake process, and better training for ICE employees).) Even assuming, *arguendo*, that some part of the requested relief is too broad, this does not justify dismissal. *See Holt Civic Club*, 439 U.S. at 66 ("[a complaint's] omissions are not in and of themselves a barrier to redress of a meritorious claim"); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) ("Notwithstanding Appellants' failure to identify a suitable remedy, a federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one.").

## II.   <u>Jurisdiction Is Proper As To Plaintiff's FTCA Claims.</u>

### A. The "Discretionary Function" Exception Does Not Apply to Bar Mr. Lyttle's Claims.

The detention, interrogation, and deportation of U.S. citizens (much less mentally impaired U.S. citizens) is obviously not part of the United States' immigration policy. OC Defendants, however, maintain they are exempt from liability for the grievous harms that Mr. Lyttle suffered when ICE and CBP agents

unlawfully detained, interrogated, and deported him.  On the contrary, the actions

challenged by Mr. Lyttle "are not the kind of conduct that can be said to be

grounded in the policy of the regulatory regime." *U.S. v. Gaubert*, 499 U.S. 315,

325 (1991).  The "discretionary function" exception does not apply here for several

reasons.

First, the discretionary function exception is not an available defense

because, as a matter of law, ICE and CBP agents have absolutely no discretion to

violate the constitutional rights of a U.S. citizen.  *Denson v. U.S.*, 574 F.3d 1318,

1337 (11th Cir. 2009) ("government officials lack discretion to violate

constitutional rights"); *Wormley v. U.S.*, 601 F. Supp. 2d 27 (D.D.C. 2009) (citing

cases where courts have held that "whatever the breadth of a government

employee's discretion, that discretion does not include violating constitutional

rights").  Deporting a U.S. citizen is a deprivation of liberty in violation of the

Fifth Amendment.  *See Ng Fung Ho v. White*, 259 U.S. 276, 284-85 (1922) ("To

deport one who so claims to be a citizen obviously deprives him of liberty . . . . It

may result also in loss of both property and life, or of all that makes life worth

living.").  Deporting a U.S. citizen against his will is also "a forcible restraint on

that citizen's liberty that implicates the Fourth Amendment." *Order re: Federal

Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment Claim Insofar as It

Relates to Mr. Guzman's Deportation to Mexico* at 2, *Guzman v. Chertoff*, No. 08-

1327 (C.D. Cal. Feb. 18, 2009).  Mr. Lyttle is and always has been a U.S. citizen, and he was detained and deported by ICE and denied entry to the United States by CBP.  (Compl. ¶¶ 7, 37, 49, 56, 86, 101, 110, 119, 125.)

This Court has recognized that "to the extent that . . . FTCA claims . . . involve unconstitutional conduct, the claims do not fall under the discretionary function exception." *Mancha v. Immigration and Customs Enforcement*, No. 06-2650, 2009 WL 900800, at *4 (N.D. Ga. Mar. 31, 2009).  In *Mancha*, the court sustained a trespass claim against ICE, finding that the U.S. citizen plaintiffs alleged sufficient facts to establish that ICE agents' entry and search of their homes without producing a warrant, asking permission, or exigent circumstances, violated the plaintiffs' Fourth Amendment rights.  *Id.* Similarly the discretionary function exception does not bar Mr. Lyttle's claims because he has alleged sufficient facts to establish that ICE unlawfully arrested, detained, interrogated, and deported him in violation of his Fourth and Fifth Amendment rights.  (Compl. ¶¶ 37-126.) Further, OC Defendants' intentional discrimination and targeting of Mr. Lyttle on the basis of his race and/or ethnicity is plainly unconstitutional conduct not covered by the discretionary function exception. (Compl. ¶¶ 3, 94-96, 99, 180.)

In addition, the discretionary function exception does not apply here because ICE agents violated their non-discretionary duties under a memorandum entitled "Superseding Guidance on Reporting and Investigating Claims to United States

Citizenship," issued by Defendant James T. Hayes, then Director of ICE Detention

and Removal Operations ("DRO"), to all ICE Field Office Directors ("FOD")

referenced in Paragraph 63 of Plaintiff's Complaint (the "Hayes Memo").[2]  It is

settled that the discretionary function exception does not apply where "a federal

statute, regulation, or policy specifically prescribes a course of action." *Autery v.

U.S.*, 992 F.2d 1523, 1529 (11th Cir. 1993) (citation and quotations omitted).

Here, the Hayes Memo prescribed a specific manner in which ICE agents should

handle affirmative claims of citizenship by detainees, and ICE agents' compliance

with this established policy — the purpose of which was to address ongoing

problems and deficiencies within ICE in its agents' handling of such claims — is

non-discretionary.[3]

The Hayes Memo was published on November 6, 2008 in response to

congressional hearings and significant media attention to the detention and

deportation of U.S. citizens.  (Compl. ¶¶ 64-66.)  At the time of Mr. Lyttle's arrest

---

[2] Even if the Hayes Memo did not establish a non-discretionary duty to thoroughly
investigate Mr. Lyttle's claim of U.S. citizenship, ICE was on notice to investigate
it, as ICE is well aware that the arrest, detention, interrogation, and deportation of
U.S. citizens is beyond the bounds of its authority.

[3] OC Defendants mischaracterize Mr. Lyttle's claims as being solely about
investigation and interrogation methods, and consequently erroneously rely on
cases that are inapplicable. *Mesa v. U.S.*, 123 F.3d 1435 (11th Cir. 1997)
(discretion in locating and identifying subject of arrest warrant); *Williams v. U.S.*,
314 F. App'x 253 (11th Cir. 2009) (discretion in execution of arrest); *Smith v. U.S.*,
375 F.2d 243 (5th Cir. 1967) (prosecutorial discretion); *Lipmann v. City of Miami*,
622 F. Supp. 2d 1337 (S.D. Fla. 2008) (discretion in search and seizure of property
based on public safety concern).

and detention, the Hayes Memo required ICE agents to "immediately notify" the FOD of affirmative claims of citizenship, and required the FOD, in turn, to "make the appropriate notification to DRO headquarters." (Hayes Memo at 1.)  The Hayes Memo also required that interviews with detainees such as Mr. Lyttle "be recorded as sworn statements and include all questions needed to complete all fields on a Form I-213. [T]he sworn statement must include probative questions designed to elicit information sufficient to allow an investigation of the person's claim of citizenship [including] vital records . . ., family interviews, and other appropriate investigative measures." (*Id.* at 2.)  In addition, where a claim of citizenship is made after the issuance of a Notice to Appear, "each [Office of Chief Counsel ('OCC')], in consultation with the FOD, who where necessary, should consult with HQ DRO, will determine the most appropriate course of action with respect to the disposition of the NTA and termination of the case, while providing any necessary advice to the FOD as to changes to the individual's custody conditions." (*Id.*)  The Hayes Memo further requires FODs to "ensure that all DRO employees in their area of responsibility (inclusive of those state, local or tribal cross-trained 287(g) officers) who are under their control, **understand and adhere to this policy**." *Id.* (emphasis added).

Mr. Lyttle has alleged sufficient facts to establish that ICE agents did not act in accordance with the mandatory requirements of the Hayes Memo, however

deficient those requirements were.  Not only did ICE agents fail to perform the minimal inquiries into his claim of citizenship required of them under the Hayes Memo, they also never informed the FOD or any other ICE staff, including DRO headquarters and local OCC, of Mr. Lyttle's claim. (Compl. ¶ 73.)  OC Defendants do not dispute that ICE agents did not perform these required tasks.  Accordingly, the discretionary function exception to the FTCA does not apply to facts alleged in Plaintiff's Complaint.

Additionally, the discretionary function exception cannot apply here inasmuch as Defendants possessed affirmative evidence of Mr. Lyttle's U.S. citizenship, yet disregarded it.  To hold otherwise, especially at the pleadings stage, would be tantamount to ruling that government officials have "discretion" to decide whether to allow U.S. citizens to remain in this country or whether to detain and deport them to Mexico.  ICE and CBP agents searched federal databases on multiple occasions and discovered records verifying Mr. Lyttle's U.S. citizenship and listing his social security number.  (Compl. ¶¶ 44-45, 92.)  Although ICE and CBP agents may exercise a certain level of discretion in the execution of their law enforcement duties, their decision to disregard this probative evidence was patently non-discretionary, given both the obligations under the Hayes Memo to report such information and the absence of any authority to detain and deport a U.S. citizen. Unless this Court is prepared to hold that the detention and deportation of a U.S.

citizen is discretionary, ICE and CBP cannot evade liability by claiming that this specific misconduct falls under the discretionary function exception.

Moreover, the Government's reliance on *Nguyen v. U.S.*, 65 F. App'x 509, 2003 WL 1922969 (5th Cir. 2003) (per curiam), for the proposition that the discretionary function exception bars Mr. Lyttle's FTCA claims, is misplaced.[4] *Nguyen* involved a legal permanent resident unaware of his eligibility for derivative citizenship. *Id.* at *1.[5]  The court held that the discretionary function exception barred Nguyen's tort claims because "[n]o regulation or statute prevented the INS agents from pursuing deportation proceedings against Nguyen based on the information available to them," and INS agents "had sufficient reason to believe, based on repeated admissions, explicit and implicit, by both Nguyen and his attorney, that Nguyen was an alien." *Id.* at *2.  In particular, the court found that the INS agents "did not commit a constitutional violation nor did they engage in any conduct that could be described as in bad faith." *Id.*

---

[4] *Diaz v. U.S.*, No. 99-6374, 2002 WL 31002842 (N.D. Ill. Sept. 3, 2002), cited in OC Defendants' Motion to Dismiss at 19 and discussed at 22, n.12, is also inapposite, as it involved FTCA claims brought by a non-citizen who falsely claimed to be a U.S. citizen.

[5] *Bernado v. U.S.*, No. 02-0974, 2004 WL 741287 (N.D. Texas Apr. 5, 2004), cited in OC Defendants' Motion to Dismiss at 22, n.12, also involved a legal permanent resident who was unaware of his eligibility for derivative citizenship and was arrested, detained, and ordered deported. Because Mr. Lyttle is and always has been a U.S. citizen, and because he affirmatively asserted his U.S. citizenship to ICE and CBP agents, his claims are dissimilar to those raised in *Nguyen* and *Bernado*.

Here, in contrast, ICE agents have no jurisdiction over U.S. citizens and were not authorized to arrest, detain, interrogate, and deport Mr. Lyttle. Furthermore, ICE and CBP agents had no reason to believe that Mr. Lyttle was a non-citizen given readily available documentary (indeed, government) evidence of Mr. Lyttle's U.S. citizenship, the absence of documentary evidence to the contrary, and his repeated assertions of his U.S. citizenship.  (Compl. ¶¶ 58, 76, 91, 106, 120.)  ICE and CBP agents' failure to investigate Mr. Lyttle's claim of U.S. citizenship and deliberate indifference towards evidence of his U.S. citizenship is categorically outside their discretionary duties.  Consequently, this Court should deny Defendants' Motion to Dismiss Mr. Lyttle's FTCA claims based on the discretionary function exception.

## B. The "Due Care" Exception Does Not Apply to Bar Mr. Lyttle's Claims.

OC Defendants contend that the false imprisonment, negligence, and intentional infliction of emotional distress claims should be dismissed pursuant to 28 U.S.C. § 2680(a), which states, in relevant part: "The provisions of this chapter . . . shall not apply to . . . a) Any claim based upon an act or omission of an employee of the defendants, exercising due care, in the execution of a statute or regulation."  This argument fails for at least three reasons, as set forth herein.

1.  **Application of the due care exception is a factual inquiry that should not be dismissed at the pleading stage.**

The due care exception does not justify a dismissal at the pleading stage where there is a dispute over material facts. *Compare Lippman v. City of Miami*, 622 F. Supp. 2d 1337, 1343 (S.D. Fla. 2008) (finding that "it would be premature to apply the due care exception as a matter of law" because the "inquiry requires an examination of the circumstances and the facts surrounding the decision to search"), *with Hydrogen Tech. Corp. v. United States,* 831 F.2d 1155, 1164 (1st Cir. 1987) (dismissing a claim under the due care exception because the officers acted reasonably and "the parties have agreed that there is no dispute over material facts). OC Defendants rely on a Fourth Circuit case where the plaintiff was detained, as here, pursuant to 8 U.S.C. § 1226(c)(1)(B), but that case only reinforces how premature OC Defendants' motion is. *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005). In that case, the court explicitly noted that "The material facts of this case are not in dispute." *Id.* at 649.

In contrast, material facts here surrounding the due care exception are in dispute. For example, the parties dispute whether Mr. Lyttle was coerced into signing a sworn statement about his citizenship. (Compl. ¶ 78; Defs' Br. at 33 (describing the claim as hyperbole.)) There is further disagreement over whether Mr. Lyttle ever informed officers that he was from Mexico. (*See* Compl. ¶ 38; Defs' Br. at 4.) Similarly, OC Defendants claim to have "performed their usual

duties," Defendants' Motion to Dismiss at 33, while Mr. Lyttle alleges that

Defendants "did not even perform the minimal inquiries required of them."

(Compl. ¶ 73.)  So long as these disputes over basic material facts are unresolved,

it would be impossible for the Court to rule as a matter of law whether the officers

acted with due care.  Thus, in line with the precedent cited above—and even the

precedent Defendants cite—dismissal would be inappropriate.

### 2. The due care exception does not apply because Defendants acted without due care in applying the statute.

Dismissal based on the due care exception also would be inappropriate

inasmuch as Mr. Lyttle has adequately alleged that Defendants acted without due

care in following the statutes.  While the due care exception protects government

behavior "in the execution of a statute", such behavior is protected only when the

government official is "exercising due care."  28 U.S.C. § 2680; *see also,*

*Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990) ("The first clause

[of § 2680], exempting actions mandated by statute or regulation, applies only if

the actor has exercised due care).  OC Defendants selectively quote case law in a

way that masks this important point.  They argue that the due care exception

shields OC Defendants "[b]ecause there is no allegation...that an immigration

officer 'deviated from the statute'".  (Defs' Br. at 24 (quoting *Welch*, 409 F.3d at

652)).  This quotation omits the first half of the *Welch* court's sentence.  In full, it

reads "[Plaintiff] does not claim that the INS officers carried out their

responsibilities *in an inappropriate manner*, or in any way deviated from the statute[]".409 F.3d at 652 (emphasis added).  Thus, the due care exception does not protect government officials from liability where officials carry out their statutory responsibilities in an inappropriate manner.  This is in line with both the plain language of the statute and case law interpreting it.  The *Welch* court noted that the purpose of the law is to prevent the use of tort action to test the legality of the law. *Welch,* 409 F.3d at 653.  As the *Welch* court went on to point out, then, the due care exception would not bar an action against ICE officials for alleged defects in execution of the statute, rather than defects in the statute itself.  *Id*.

Mr. Lyttle's claim safely overcomes the due care exception hurdle, because unlike in *Welch*, he alleges that Defendants "carried out their responsibilities in an inappropriate manner" and did not exercise due care.  *Welch*, 409 F.3d at 652.  Mr. Lyttle alleges "outrageous conduct" (*Compl.* ¶ 191), inappropriate interrogation and detention tactics (¶ 180), and negligence leading to the deportation of a U.S. citizen (¶ 179).  In fact, Mr. Lyttle's allegations echo the language in *Welch* even more closely, arguing that ICE's minimal inquiries into Mr. Lyttle's citizenship fell below standards of appropriateness in investigations.  (Compl. ¶ 73.)  *See Welch*, 409 F.3d at 652.  Because Mr. Lyttle has adequately alleged that Defendants acted inappropriately and without due care in fulfilling their statutory obligations, the due care exception does not apply.

*Welch* is also inapplicable because it involved a detainee who was rightfully detained pursuant to statute.  In *Welch,* the defendants properly detained a Panamanian national under 8 U.S.C. § 1226(c) after he had pled guilty to committing a felony.  409 F.3d at 650.  While a court later ruled that the detention was unconstitutional for lack of a bail hearing, at no time was the detention invalid under § 1226(c).  In contrast, this case involves a detention that is illegal and inappropriate under the statute itself.  Thus, this case is more akin to the situation in *Nguyen v. United States*.  556 F.3d 1244, 1260 (11th Cir. 2009).  The Eleventh Circuit upheld the plaintiff's FTCA claim in *Nguyen* because the plaintiff's arrest was based on negligent investigative and arrest practices.  *Id.* at 1249.  Similarly, Mr. Lyttle's detention was improper under the statute (even if the arresting officer believed otherwise).  *See Id.*  As such, the court's reasoning in *Welch* does not apply, and the due care exception does not apply.

### 3.  The due care exception does not apply to false imprisonment claims in the Eleventh Circuit.

Under Eleventh Circuit case law, FTCA claims based on law enforcement actions—like false imprisonment—overcome the exceptions in § 2680(a), like the due care exception. While § 2680(a) protects government actions taken with due care pursuant to a statute, § 2680(h), passed subsequently, states, "with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall

apply to *any claim* arising, on or after the date of the enactment of this proviso, out

of . . . false imprisonment, false arrest . . ." 28 U.S.C. § 2680(h) (emphasis added).

Mr. Lyttle's FTCA claim for false imprisonment is not barred by 28 U.S.C.

§ 2690(a) because the law enforcement proviso of § 2680(h) supersedes the

exceptions in § 2680(a).  *See Nguyen v. United States*, 556 F.3d 1244, 1260 (11th

Cir. 2009) ("To the extent of any conflict, the later enacted and more specific

subsection (h) proviso trumps the earlier and more general subsection (a), as

Congress clearly intended that it would."); *Williams v. United States*, 314 F. App'x.

253, 258 (11th Cir. 2009) (applying Nguyen); *Denson v. United States*, 574 F.3d

1318, 1349 (11th Cir. 2009) cert. denied, 130 S. Ct. 3384 (U.S. 2010) (concurring

opinion) (noting that in the Eleventh Circuit, § 2680(h) waives sovereign immunity

for false imprisonment claims where an official is alleged to have violated the

Constitution); *Williams v. United States*, No. 08-1771, 2010 WL 1408398 (M.D.

Fla. Apr. 2, 2010) (noting that § 2680 preserves sovereign immunity for 2680(a)

exceptions, but only for federal employees who are not investigative or law

enforcement officers); *Mancha v. Immigration & Customs Enforcement*, 06-2650,

2009 WL 900800 (N.D. Ga. Mar. 31, 2009); *Milligan v. United States*, No. 07-

1053, 2009 WL 2905782 at *5 (M.D. Tenn. Sept. 4, 2009) ("this court finds the

*Nguyen* court's analysis to be thorough and its conclusion to be persuasive").

Defendants nonetheless argue that *Nguyen* only applies to the discretionary function exception and not to the due care exception.[6]  The language and reasoning of *Nguyen* belies this argument.  First, the *Nguyen* court broadly stated that "[t]o the extent of any conflict, the later enacted and more specific subsection (h) proviso trumps the earlier and more general subsection (a), as Congress clearly intended that it would."  556 F.3d at 1260.  The court's holding clearly applies to subsection (a) as a whole—not just to the discretionary function exception.  Further, the statutory interpretation and congressional intent arguments put forth by the *Nguyen* court apply with equal force to all the exceptions in subsection (a), since all are broader than subsection (h) in scope, were passed prior to the enactment of subsection (h), and, if applied in a way that superseded subsection (h), would frustrate congressional intent.

---

[6] In arguing that the due care exception still does apply, Defendants rely on a pre-*Nguyen* Fourth Circuit case.  *US v. Welch,* 409 F.3d 646, 651 (2005).  However, this Court has expressly refused to follow the Fourth Circuit's approach.  *Nguyen,* 556 F.3d at 1257 ("We are not persuaded to follow [other circuits'] approach").

### III.   Plaintiff's FTCA Claims State a Claim Pursuant to Rule 12(b)(6).

### A. Counts 6, 7 and 9 All State a Claim and Should Not be Dismissed.

#### 1.   The False Imprisonment Claim Does Not Fail Because Lyttle's Detention Was Not Pursuant to Procedurally Valid Process.

On pages 26-28 of their Brief, OC Defendants assert that Mr. Lyttle cannot assert a claim for false imprisonment under the Federal Tort Claims Act ("FTCA") because his detention was pursuant to a "valid legal process."  OC Defendants' argument misapprehends both governing Georgia law and the well-pleaded allegations in Mr. Lyttle's Complaint.  OC Defendants rely on only one modern case in support of their argument, *Williams v. Smith*, 348 S.E.2d 50 (Ga. Ct. App. 1986).  *Williams* involved a claim by a person who was involuntarily hospitalized for psychiatric treatment pursuant to O.C.G.A. § 37-3-41, after a psychiatrist executed the statutorily required certificate for involuntarily treatment. *Id.* at 51.  After a further examination the plaintiff was released the same day. *Id.*  While *Williams* does indeed support the proposition that the use of legal process may preclude a claim for false imprisonment,[7] it specifies that such process must be "procedurally valid," and a false imprisonment claim is actionable based on a void

---

[7] The *Williams* court went out of its way to clarify that even if the legal process defense barred a claim for false imprisonment, other Georgia tort claims would be available, including without limitation malicious use of process. *Id.* at 53-54. Regardless of the disposition of the OC Defendants' Motion, Plaintiff anticipates seeking leave to amend to assert a claim for malicious use of process.

or defective process secured in bad faith. *Id.* at 52-53. Even the Georgia courts expressly following *Williams* have made it clear that a vague assertion of acting under color of law is not sufficient to invoke the exception for valid legal process and have carefully scrutinized the defendants' substantive compliance with the legal process with governing statutes. *See, e.g.*, *Ridgeview Institute, Inc. v. Wingate*, 520 S.E.2d 445 (1999).

More recent decisions applying *Williams* have made it even more clear that a false imprisonment claim is not barred when a detention is made pursuant to a procedurally void or defective process. *See, e.g.*, *Bunyon v. Burke County*, 285 F. Supp. 2d 1310, 1329 (U.S. Dist. S.D. Ga. 2003), *aff'd without op.*, 2004 U.S. App. LEXIS 27877 (11th Cir. Ga. 2004). In *Bunyon*, the court denied the motion for summary judgment certain municipal government officials on the plaintiff's claim for false imprisonment, where the arresting officers relied upon a warrant, but the warrant was invalid, lacking information required for an arrest warrant and being signed by a judge who was only authorized to issue bench warrants for failure to appear. *Id.* at 1329-30. Perhaps of even greater significance to the instant case, this Court recently denied a motion to dismiss a false imprisonment case brought under the Federal Tort Claims Act by a United States citizen who was alleged to have been arrested and detained in an immigration raid, noting that "[t]his argument, along with similar arguments made by the Defendant on this issue, is

more properly considered on a motion for summary judgment." *Mancha v.*

*Immigration & Customs Enforcement*, 2009 U.S. Dist. LEXIS 27620, *17 (N.D.

Ga. Mar. 31, 2009).

OC Defendants assert that "Lyttle acknowledges, as he must, that

immigration officials issued several types of legal process to initiate, and as part of,

his, his deportation proceedings" (OC Defs' Br. at 27) and then assert, with no

citations, that "[t]here can be no question that this process was procedurally valid,

and Lyttle does not allege otherwise." (*Id.*) On the contrary, Lyttle's Complaint

directly and expressly challenges the validity of the process used. (*See, e.g.*,

Complaint, ¶¶ 89 ("to date, no meaningful safeguards exist to ensure due process in

removal proceedings for people with mental disabilities") and 90 ("immigration

judges are prohibited from accepting admissions of alienage from unrepresented,

incompetent respondents, 8 C.F.R. § 1240.10(c), and the Department of Homeland

Security is not allowed to serve charging documents upon a known mentally

incompetent person, 8 C.F.R. § 103.5a(c)(2).")

The allegations in Plaintiff's Complaint do not remotely describe actions

taken pursuant to a procedurally valid process. Rather, they describe ICE agents in

North Carolina apprehending Mark Lyttle without any prior legal process while he

was in the custody of the North Carolina Department of Corrections, then

interrogating him with full knowledge that he was cognitively impaired, and then

falsely classifying him as being from Mexico, despite the overwhelming evidence in their possession to the contrary. (Complaint, ¶¶ 37-38, 43-45.) The Complaint further alleges how the OC Defendants in Georgia interrogated Mr. Lyttle and ignored both his sworn statements and all the evidence before them in charging him as deportable. (*Id.* at 58-59.) It alleges that the OC Defendants did not comply even with the deficient and inadequate procedures, procedures that were not "procedurally valid," set forth in the Hayes Memo. (*Id.* at ¶¶ 72-73.) At best, then, OC Defendants may assert that at various points during Mr. Lyttle's illegal detention, they acted loosely under color of Federal law. Not only is this inadequate as a *defense* to a false imprisonment case under the FTCA, however, but it is precisely the kind of claim the drafters of the law had in mind:

> It is what the [FTCA] Committee Report meant when it said: "The effect of this provision is to deprive the Federal Government of the defense of sovereign immunity in cases in which Federal law enforcement agents, acting within the scope of their employment, or under color of Federal law, commit any of the following torts: assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process."

*Nguyen v. United States*, 536 F.3d 1244, 1256 (11th Cir. 2009).

Although the specifics of the procedural inadequacies of Mr. Lyttle's detention and the bad faith undertaken by the OC Defendants is a matter for discovery, at this juncture Lyttle has adequately pled a claim for false imprisonment against the United States.

## 2.    Mr. Lyttle's Negligence Claim is Viable.

On pages 28-31 of their Brief, OC Defendants assert that Mr. Lyttle's negligence claim in Count 7 fails, not because Plaintiff has failed to plead the elements of common law negligence or because of any defense to such a claim, but rather because OC Defendants are unaware of any Georgia case law discussing a negligence claim against a private actor under circumstances they would consider to be comparable to Mr. Lyttle's situation, *i.e.* the unlawful detention and deportation of a mentally impaired U.S. citizen undertaken in plain view of the facts demonstrating his U.S. citizenship.  (OC Defs' Br. at 28-30.)  But the very case primarily relied upon by OC Defendants, *Rayonier, Inc. v. United States*, 352 U.S. 315 (1957), utterly refutes their argument.  It is true that Mr. Lyttle must establish the same elements of common law negligence as for a negligence claim against a private actor (*i.e.* breach of a duty of cared owed to the plaintiff, proximate cause and damages), and OC Defendants do not challenge that Mr. Lyttle has alleged these elements.[8]  But that does not mean that his claim must be factually similar to tort claims against private actors.  As the Supreme Court in *Rayonier* recognized in reversing the trial court's dismissal of FTCA claims against firefighters for negligence in allowing fires to spread:

---

[8] Whether the evidence in this case ultimately bears out the elements of Plaintiff's negligence claim is an issue that can be addressed only after discovery and the presentation of evidence, as it was in the case of *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081 (11th Cir. 2004), cited on page 28 of OC Defendants' Brief.

> It may be that it is 'novel and unprecedented' to hold the United States
> accountable for the negligence of its firefighters, but the very purpose of the
> Tort Claims Act was to waive the Government's traditional all-
> encompassing immunity from tort actions and to establish novel and
> unprecedented governmental liability.

352 U.S. at 319.  In so holding, the Court rejected precisely the argument that OC

Defendants make here, namely the assertion that the FTCA claim does not permit

claims for government actors performing "uniquely governmental" functions.  *Id.*

at 318-19.

On pages 29-30 of their Brief, OC Defendants try to compare Mr. Lyttle's

negligence claim to a claim asserting that the defendant had a legal duty to assist

someone in danger, basically the good Samaritan doctrine, then they argue that

Georgia law does not recognize such a duty.  This is a classic "straw man"

argument.  Mr. Lyttle has not filed suit claiming that the OC Defendants (or

anyone else) failed to come to his rescue – his claims are based on affirmative acts

and omissions which violated, among other things, the duty of care owed to him

under the circumstances.  Plaintiff submits that it is not surprising that there are

apparently not many reported Georgia cases involving negligence claims against

private actors involving facts like those in the instant case.  As difficult as it us to

imagine such a thing taking place within the U.S. immigration enforcement

system, it is even harder to imagine it occurring in a claim involving only private

actors.  But as the Court in *Rayonier* recognized, such "novel and unprecedented" claims are at the heart of the FTCA.

### 3.     Mr. Lyttle's IIED Claim is Viable, and He Has Alleged Extreme and Outrageous Conduct.

On pages 31-34 of their Brief, OC Defendants assert that their conduct was not sufficiently extreme and outrageous to support a claim of intentional infliction of emotional distress ("IIED") under Georgia law, and that this Court should dismiss the claim before Mr. Lyttle has the opportunity to conduct discovery or present evidence on this issue.  But the cases upon which OC Defendants rely not only stand in stark contrast to the allegations in Mr. Lyttle's Complaint, but they only underscore that a determination of whether OC Defendants' conduct is sufficiently extreme and outrageous cannot be made without discovery and an evidentiary record.  As an initial matter, Plaintiff notes that three of the four cases OC Defendants cite on this issue involve motions for summary judgment, where consideration of deposition testimony and the evidentiary record were the basis for a determination of "extreme and outrageous conduct."  *See Frank v. Fleet Fin., Inc. of Georgia*, 518 S.E.2d 717, 720 (Ga. Ct. App. 1999); *Conley v. Dawson*, 572 S.E.2d 34, 38 (Ga. Ct. App. 2002); *Miraliakbari v. Pennicooke*, 561 S.E2d 483, 487 (Ga. Ct. App. 2002).  The fourth case, *Willis v. United Family Life Ins.*, 487 S.E.2d 376, 382 (Ga. Ct. App. 1997), was based entirely on the defendant's

conduct in sending letters that were attached as exhibits to the complaint, thus there was no need to consider additional evidence in evaluating the claim.

Apart from their procedural posture, the conduct in the cases cited by OC Defendants stands in stark contrast to Plaintiff's allegations in the instant case. For example, the conduct in *Fleet Finance* underlying the plaintiff's IIED was the defendant's alleged refusal to close on the re-financing of a house. 518 S.E.2d 717, 719. In *Willis* it was the defendant's conduct in sending letters to customers, which letters made no reference to the plaintiff, directing the customers not to send insurance premium checks to someone who was unauthorized to collect them. 487 S.E.2d 376, 378. In *Conley*, it was a police officer's alleged decision not to include, in an accident investigation report, the statement of a witness the officer believed to be unreliable. 572 S.E.2d 34, 36. In *Miraliakbari* it was a Burger King manager's conduct in not permitting an employee to leave work or use a work phone to follow up on a report that her son got hurt at school. 561 S.E.2d 483, 486-88. *Miraliakbari*, in particular, involved a close review of the fact record.

As Georgia courts have recognized, [w]hen evaluating whether the objected to conduct can reasonably be characterized as outrageous or egregious, a jury may consider evidence of a defendants' malicious purpose or wanton disregard of a plaintiff's rights." *K-Mart Corp. v. Lovett*, 525 S.E.2d 751, 755 (Ga. Ct. App. 1999). Based on this rule, the Georgia Court of Appeals in the *Lovett* case

affirmed a jury verdict on the plaintiff's IIED claim based on evidence that the defendant's agent signed a false citizen's arrest form for shoplifting, knowing that the plaintiff would be jailed for an unknown duration, and took no steps to end the plaintiff's incarceration. *Id. See also Gordon v. Frost*, 388 S.E.2d 362 (Ga. Ct. App. 1989) (reversing directed verdict in favor of defendant on IIED claim arising out of false arrest of pharmacy customer for violation of the Georgia Controlled Substances Act.) Of particular note, the *Gordon* court emphasized that a jury could consider the defendant's control over the plaintiff and the defendant's knowledge of the plaintiff's susceptibility to emotional distress. *Id.* at 521-22. At the initial pleading stage, Georgia courts have been even more reluctant to dismiss an IIED claim based. The Georgia Court of Appeals recently reversed the grant of defendant's motion dismiss an IIED claim based upon the failure of law enforcement officers to take appropriate security precautions in response to threats and dangers posed by an inmate who escaped and killed two court officers. *Clarke v. Freeman*, 692 S.E.2d 80 (Ga. Ct. App. 2010).

The allegations against the OC Defendants in the instant case do not involve merely rude conduct or an errant, good faith judgment call. Rather, they involve OC Defendants' alleged conduct in unlawfully detaining a mentally impaired United States citizen without any reasonable basis for concluding that he was not a citizen (Complaint, ¶ 54), continuing to deprive him of his liberty while failing or

refusing to act upon his claims of (and objective proof of) his citizenship (*Id.*, ¶¶ 58, 76-77), taking these actions in violation of official ICE policy (*Id.*, ¶ 73) with the result that after a suicide attempt (*Id.*, ¶ 83) Mr. Lyttle was ordered removed from the United States and deported to the Mexican border, forced to disembark and sent off on foot still wearing a prison-issued jumpsuit, with approximately three dollars in his pocket and no familiarity with Mexico or ability to speak Spanish (*Id.*, ¶¶ 101, 103), then eventually detaining him again upon his return to Atlanta (*Id.*, ¶¶ 124-26).

In short, this case much more closely resembles *Lovett*, *Gordon* and *Clarke* than the cases cited by OC Defendants.  Like the defendant in *Clarke*, OC Defendants knew of Plaintiff's psychological and emotional problems, and exercised a position of control over him, yet callously allowed him to be detained and deported.  At the pleading stage, there is simply no basis to conclude, as a matter of law, that the OC Defendants' conduct is merely unpleasant (or, as OC Defendants characterize it in the second sentence of their Brief, "unfortunate,") but not extreme or outrageous.

## B. OC Defendants Motion for Summary Judgment on Count 8 Is Premature and Precluded by Disputed Facts.

OC Defendants have moved for summary judgment on the FTCA claim ("Count 8") relating to the negligence of the United States Public Health Service ("PHS") employees resulting in the administration of sixty Glucophage pills to Mr.

Lyttle while in ICE custody. (*See* Compl. ¶ 85-89). Even at this juncture, however, material disputed facts preclude summary judgment. Additionally, Plaintiff is entitled to discovery to fully respond to OC Defendants' one-sided version of the facts surround this claim.

Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)) prevents a party from having to respond prematurely to a motion for summary judgment where discovery is necessary and appropriate to respond to the motion. Fed. R. Civ. P. 56(d); *Denton v. United States*, Case No. 1:04-CV-3285-RLV, 2006 U.S. Dist. LEXIS 44986, at *11 (N.D. Ga. June 21, 2006) (the rule is "designed to be a shelter against the precipitous entry of summary judgment"). Whether to grant a Rule 56(d) request is within the discretion of the trial court. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). It is well-established that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). Further, "[b]efore entering summary judgment the district court must ensure that the parties have an adequate opportunity for discovery." *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Summary judgment **must** be refused where the nonmoving party has not had the opportunity to discover information that is essential to his

opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (emphasis added); *see also Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). As this Court has noted, "[i]n a typical situation, Rule 56(f) is applied where the opposing party is unable to justify his opposition because knowledge of the relevant facts is exclusively with or largely within the control of the moving party." *Denton*, 2006 U.S. Dist. LEXIS 44986, at *11, n.2 (cits. omitted).

Even at this juncture, the disputed material facts surrounding Count 8 preclude summary judgment. For example, it is disputed whether PHS employees administered the potentially fatal dose of medication to Mr. Lyttle, an individual with known and documented psychological problems. (*See, e.g.*, Affidavit of Mark Lyttle ("Lyttle Aff.") at ¶ 4, attached as Exhibit "A," stating that he was given a bottle of Glucophage pills while at SDC, and stating that he was not given any warning or instructions on how many pills he was supposed to take.) OC Defendants fail even to address the allegations that PHS employees failed to properly warn and instruct Mr. Lyttle and the CCA employees charged with escorting Mr. Lyttle to and from SDC about the proper dosages and administration of the diabetes medication; that they failed to adequately train and supervise

personnel performing the medical health care administration at SDC; and that they were acting within the scope of their employment when they committed these acts.

The vague assertions set forth in the declaration of Sherri Jones (OC Defs' Br., Ex. L) that "[a]ll nurses who administer medication to detainees in the pill line at [SDC] are trained to closely observe the detainees" and that "there is no indication that Lyttle was provided with 60 tablets of Glucophage on November 17, 2008, or any other day while he was detained at the Stewart Detention Center" are insufficient to prove that a PHS employee did not administer the medication to Lyttle or cause the medication to be administered to him. Furthermore, it would be inappropriate to grant summary judgment at this stage where Plaintiff has not had an opportunity to depose Ms. Jones; the individual(s) who authored the Medical Administration Record ("MAR") (OC Defs' Br., Ex. K-1) or the handwritten "interdisciplinary patient notes" (OC Defs' Br., Ex. K-3 at pp. 44-45); or the individual(s) who performed the mental health evaluation (*See* OC Defs' Br., Ex. K-3 at pp. 42-43).

As set forth in the attached Affidavit of Plaintiff's counsel, Brian Watt Esq. ("Watt Aff."), attached as Exhibit "B," information and testimony obtained in discovery will permit Plaintiff to further respond to OC Defendants' version of events surrounding Mr. Lyttle's overdose. (*See, e.g.,* Watt Aff. ¶¶ 6-9.) Of course, Plaintiff has not yet had any opportunity to challenge the declarations or other

factual materials submitted by the United States or to furnish his own opposing evidence and testimony.  (Watt Aff. ¶ 5.) Therefore, the Court should deny the United States' Motion for Summary Judgment on Count 8.  In the alternative, the Court should defer consideration of the motion until the parties have had an opportunity to conduct discovery.

## IV.    The Foreign Country Exception Does Not Limit Plaintiff's FTCA Claims.

Mr. Lyttle's FTCA claims against Defendants are not barred by the foreign country exception because they are based on injuries that he suffered while in the United States.  Section 2680(k) is a limited exception to the waiver of sovereign immunity created by the FTCA that bars claims "arising in a foreign country."  28 U.S.C.A. § 2680(k).  The Supreme Court has interpreted § 2680(k) to bar only those claims based on injuries where the "place of harm" suffered by the plaintiff is located in a foreign country.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 705-12 (2004).  In *Sosa*, the plaintiff was abducted from his home in Mexico, held overnight in a Mexican motel, and forcibly transported by private plane from Mexico to the United States.  *Sosa*, 542 U.S. at 698.  In contrast, Mr. Lyttle was seized by ICE agents in North Carolina, wrongfully detained and interrogated in both North Carolina and Georgia, and transported by plane to Texas before illegally being expelled from the United States.  (Compl. ¶¶ 37-101.)  As a result of these actions Mr. Lyttle has suffered *inter alia* physical and psychological injuries

occasioned in the United States.  (Compl. ¶ 130.)  The injuries arising in the United

States form the basis of Mr. Lyttle's FTCA claims, and therefore the foreign

country exception does not bar jurisdiction.

OC Defendants mischaracterize the damages sought by Mr. Lyttle as being

"based in large part" on injuries he sustained during the four months he spent in

Central America.  (OC Defs' Br. at 39.)   Rather, the principal basis for Mr.

Lyttle's FTCA claims are the injuries he incurred in the United States as a result of

the torts of false imprisonment, negligence, and IIED as stated in Counts 6-9 of the

Complaint.  (Compl. ¶¶ 130, 173, 179, 185, 191.)  OC Defendants misconstrue the

Complaint by focusing on the sixteen paragraphs that describe Mr. Lyttle's foreign

injuries, (OC Defs' Br. at 39 (citing to Compl. ¶¶ 102-17)), while ignoring the

seventy-eight paragraphs describing Mr. Lyttle's mistreatment within the borders

of the United States. (Compl. ¶¶ 37-101, 118-130.)  The Complaint clearly states

that Mr. Lyttle has suffered physical and psychological harms as a consequence of

this tortious mistreatment.  (Compl. ¶¶ 130, 176, 182, 188, 194-95.)  These are

actionable injuries pursuant to Georgia tort law.  *See, e.g.*, GA. CODE ANN. § 51-1-

13 ("[a] physical injury done to another shall give a right of action to the injured

party"), §51-12-6 (governing measure of damages for "injury to peace, happiness,

or feelings of plaintiff").  As such Mr. Lyttle's FTCA claims in no way "depend

on" the injuries he suffered in Central America as alleged by Defendants.  (OC Defs' Br. at 39.)

Admittedly, the foreign country exception operates in this case to bar certain types of damages that Mr. Lyttle otherwise would be entitled to recover, namely, those based solely on the additional injuries that he suffered at the hands of third parties in Central America.  However, OC Defendant's argument that § 2680(k) should limit damages to those based on injuries that Mr. Lyttle experienced "while in federal custody" is overbroad.  (OC Defs' Br. at 39-40.)  For example, the foreign country exception does not restrict the damages that Mr. Lyttle may recover for injuries originating in the United States that caused harms which he continued to experience while in Central America.  The Supreme Court has interpreted Congress's use of the phrase "arising in" in § 2680(k) to preclude jurisdiction only over claims based on injuries that *originated* in a foreign country. *See Sosa*, 542 U.S. at 704-05 (analogizing language of § 2680(k) to contemporary state "borrowing statutes" that preclude jurisdiction over causes of action that were time barred in the state "*where [the] cause of action arose, or accrued, or originated*") (emphasis in original) (internal citations omitted).  As previously discussed, the injuries giving rise to Mr. Lyttle's FTCA claims originated in the United States as a result of his arrest, detention, interrogation, and expulsion. (Compl. ¶¶ 173, 179, 185, 191.)  These injuries resulted in physical and

psychological harms of an ongoing nature, among others. (Compl. ¶¶ 176, 182, 188, 194-95.) The amount of recoverable damages to be proven at trial will encompass the ongoing suffering Mr. Lyttle experienced in relation to these injuries while in Central America.

An examination of the *Sosa* Court's reasoning further supports this position. While interpreting § 2680(k), the Court noted that the prevailing choice-of-law rules at the time the FTCA was enacted required courts to apply the substantive law of "the place of injury to the substantive rights of the parties." *Id.* at 705-06 (internal quotations and citations omitted). To adjudicate FTCA claims based on injuries occasioned in foreign countries, American courts might have to apply foreign law. *Id.* The Supreme Court concluded that the legislative history of § 2680(k) demonstrates that such an application of foreign law is precisely what Congress intended the foreign country exception to avoid. *Id.* at 707-08. Mr. Lyttle's FTCA claims as described here do not raise the concerns expressed by the *Sosa* Court because the injuries themselves occurred in the United States. Thus, there is no possibility that choice-of-law rules might require the application of foreign law. Rather, the measurement of Mr. Lyttle's damages for the harms he continued to suffer in Central America will be determined in accordance with available remedies in state tort law. Thus, the *Sosa* Court's interpretation of the

jurisdictional scope of § 2680(k) does not apply to limit categories of damages such as Mr. Lyttle's ongoing injuries occasioned in the United States.

## CONCLUSION

For the foregoing reasons, Plaintiff Mark Daniel Lyttle respectfully submits that this Court should deny the OC Defendants' Motion to Dismiss and for Summary Judgment.

Respectfully submitted this 24th day of June, 2011.

*With Co-Counsel:*

AMERICAN CIVIL LIBERTIES UNION
IMMIGRANTS' RIGHTS PROJECT

*/s/ Judy Rabinovitz*
JUDY RABINOVITZ
*Admitted Pro Hac Vice*
American Civil Liberties Union
Foundation Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel:  (212) 549-2618
Fax:  (212) 549-2654
jrabinovitz@aclu.org

TROUTMAN SANDERS LLP

*/s/ Michael E. Johnson*
MICHAEL E. JOHNSON
Georgia Bar No. 395039
BRIAN P. WATT
Georgia Bar No. 741841
ALEXANDRA J. REYES
Georgia Bar No. 428936
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2216
(404) 885-3000 Tel
(404) 885-3900 Fax

AMERICAN CIVIL LIBERTIES UNION OF GEORGIA FOUNDATION

*/s/ Chara Fisher-Jackson*
CHARA FISHER-JACKSON
Georgia Bar No. 386101
AZADEH SHAHSHAHANI
Georgia Bar No. 509008
1900 The Exchange, Suite 425
Atlanta, GA 30339
Tel:  (770) 303-8111

*Counsel for Plaintiff Mark D. Lyttle*

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARK DANIEL LYTTLE,              )
                                 )
        Plaintiff,               )
                                 )
v.                               )        CIVIL ACTION
                                 )        FILE NO. 1:10-CV-3302-CAP
UNITED STATES OF AMERICA,        )
et al.,                          )
                                 )
        Defendants.              )

## AFFIDAVIT OF MARK DANIEL LYTTLE

STATE OF GEORGIA

COUNTY OF SPALDING

Mark Daniel Lyttle, who having personally appeared before the undersigned

officer, duly authorized by law to administer oaths, having been first duly sworn

according to law, deposes and states the following:

1.      My name is Mark Lyttle.  I am over the age of eighteen and make this

affidavit based upon my personal knowledge for use in connection with the above-

referenced action.

2.      I currently reside at 222 Sibley Street, Griffin, Spalding County,

Georgia 30223.

3.      I have type 2 diabetes.  Therefore, I have to take medicine called Glucophage to help control my blood sugar levels.

4.      While I was at Stewart Detention Center ("SDC"), I was given a bottle of Glucophage pills.  I was not given any warnings or instructions on how many pills I was supposed to take.

5.      On or about November 17, 2008, while still at SDC, I took the approximately 60 Glucophage pills in the medicine bottle given to me.

6.      After I took the pills, I developed very bad stomach pains and felt very sick, so I was taken to the emergency room at Doctors Hospital in Columbus, Georgia.

7.      I was treated at Doctors Hospital for several days and then was returned to SDC.

FURTHER AFFIANT SAYETH NOT.

_Mark Lyttle_
Mark Daniel Lyttle

Sworn to and subscribed before me,
this 23 day of June, 2011.

My commission expires: _____



My Comm Expires August 24, 2012

2

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARK DANIEL LYTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. 1:10-CV-3302-CAP |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF BRIAN P. WATT

STATE OF GEORGIA

COUNTY OF FULTON

Personally appeared before the undersigned officer duly authorized by law to administer oaths, Brian P. Watt, who first being duly sworn, deposes, and says:

1.     My name is Brian P. Watt.  I am an attorney with the law firm of Troutman Sanders LLP in Atlanta, Georgia.  I am over the age of 18 years and am otherwise competent to make and give this Affidavit.  The facts stated herein are true and correct and are based on my personal knowledge.

2.     I am a member in good standing of the State Bar of Georgia and have been admitted to the practice of law in the State of Georgia since 2005.

3.      Troutman Sanders LLP are attorneys of record for Plaintiff Mark Daniel Lyttle in the above-captioned matter.  I freely and voluntarily make this affidavit as evidence in support of Plaintiff's Response in Opposition to United States' and Official Capacity Defendants' Motion to Dismiss and for Summary Judgment and for use in any other proceeding in the above-styled action, and for any other use or purpose authorized by law.

4.      Plaintiff filed this action on October 13, 2010.  [ECF Doc. No. 1.] Following the Federal Defendants' Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Complaint [ECF Doc. No. 27], and pursuant to a Scheduling Order entered by the Court on May 3, 2011 [ECF Doc. No. 44], all defendants' that had yet to file responsive pleadings were required to do so by May 13, 2011.

5.      Due to these extensions of time to answer, no Rule 26(f) conference among the parties has yet taken place.  Therefore, discovery has not yet commenced, and Plaintiff has not yet had any opportunity to uncover evidence to challenge the declarations or other factual materials submitted by the United States or to furnish his own opposing evidence and testimony.

6.      In order to fully evaluate the United States' declarations and other factual materials relating to the negligence of the United States Public Health

Service ("PHS") employees as set forth in Plaintiff's FTCA claim ("Count 8"), Plaintiff requires discovery into the following areas:

a)     the identity of and the actions taken by the nurses who were working at Stewart Detention Center ("SDC") on or about November 17, 2008;

b)     the identity of the nurses and the actions taken by the individuals who administered medication in the "pill line" where Plaintiff received his medication on the day in question;

c)     the identity of the individual(s) who authored the Medical Administration Record ("MAR") (OC Defs' Br., Ex. K-1) or the handwritten interdisciplinary patient notes (OC Defs' Br., Ex. K-3 at pp. 44-45);

d)     the individuals who performed the mental health evaluation on Plaintiff (*See* OC Defs' Br., Ex. K-3 at pp. 42-43);

e)     documents seeking, *inter alia*, the training of the nursing staff at SDC; and

f)     documents seeking, *inter alia*, the policies and procedures that must be followed when medication is administrated to individuals detained at SDC by ICE (*see* OC Defs' Br., Ex. L,¶ 3).

7.     Plaintiff intends to depose individuals with knowledge of the information above to determine, among other things, the standard operating

procedure for dispensing medication at SDC; what dosage of glucophage pills was administered to Mr. Lyttle; why Mr. Lyttle was administered the entire bottle of glucophage pills and by whom; what safeguards if any were taken to prevent an overdose; the medical diagnoses and results of any evaluations conducted of Mr. Lyttle following his overdose of glucophage pills, whether by SDC nursing staff or by outside medical staff with knowledge of the incident; and, the identity and knowledge of any other witnesses to Mr. Lyttle's overdose.

8.     Plaintiff specifically intends to depose Ms. Sherri Jones, the individual who authored the declaration in support of the Motion for Summary Judgment.  (*See* OC Defs' Br., Ex. L)

9.     Without this discovery, Plaintiff is prejudiced and cannot respond fully and completely to United States' and Official Capacity Defendants' Motion to Dismiss and for Summary Judgment.

FURTHER AFFIANT SAYETH NOT.

Brian P. Watt

Sworn to and subscribed before me, this 23rd day of June, 2011

My commission expires 3-9-2014

LYNN
NOTARY
EXPIRES
GEORGIA
MAR. 9, 2014
PUBLIC
LAURON WILSON
HENRY COUNTY

4

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify that this document is submitted in Times New Roman 14

point type as required by N.D. Ga. Local Rules 7.1 and 5.1.

*/s/ Michael E. Johnson* _____

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MARK DANIEL LYTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CASE NO.   1:10-CV-3302-CAP** |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2011, I electronically filed the preceding

***PLAINTIFF MARK DANIEL LYTTLE'S RESPONSE IN OPPOSITION TO***

***UNITED STATES' AND OFFICIAL CAPACITY DEFENDANTS' MOTION***

***TO DISMISS*** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to all parties of record.

*/s/ Michael E. Johnson*

Troutman Sanders LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Tel:  (404) 885-3000
Fax:  (404) 885-3900          ***Counsel for Plaintiff Mark D. Lyttle***