IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

COLUMBUS DIVISION

| | |
|---|---|
| MARK DANIEL LYTTLE, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 4:11-CV-00152 |
| vs. ) | |
| ) | OCTOBER 14, 2011 |
| THE UNITED STATES OF AMERICA, ) | |
| et. al., ) | TELEPHONE CONFERENCE |
| ) | |
| Defendants. ) | |

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE CLAY D. LAND,

UNITED STATES DISTRICT JUDGE

Proceedings recorded by mechanical stenography; transcript produced by computer.

BETSY J. PETERSON, RPR, CCR
Federal Official Court Reporter
Post Office Box 81
Columbus, Georgia  31902
(706) 317-3111

```
 1                         APPEARANCES

 2   FOR THE PLAINTIFF:

 3        BRIAN PATRICK WATT
          brian.watt@troutmansanders.com
 4        MICHAEL E. JOHNSON
          michael.johnson@troutmansanders.com
 5        Troutman Sanders LLP
          Attorneys at Law
 6        Bank of America Plaza
          600 Peachtree Street, N.E., Suite 5200
 7        Atlanta, Georgia  30308-2216
          (404) 885-3000
 8

 9   FOR DEFENDANTS UNITED STATES OF AMERICA AND ITS AGENTS:

10        DAVID GREGORY CUTLER
          david.g.cutler@usdoj.com
11        JAMES R. WHITMAN
          james.whitman@usdoj.com
12        U.S. Department of Justice
          Civil Division, Constitutional and
13        Specialized Torts Litigation
          Post Office Box 7146, Ben Franklin Station
14        Washington, DC  20044-7146
          (202) 616-0674
15

16   FOR DEFENDANT CORRECTIONS CORPORATION OF AMERICA:

17        STEPHEN E. CURRY
          securry@currylawfirm.com
18        Law Office of Stephen E. Curry
          3508 Professional Circle
19        Martinez, Georgia  30907-8231
          (706) 724-0022
20

21

22   COURT REPORTER:

23        BETSY J. PETERSON, RPR, CCR
          Federal Official Court Reporter
24        P. O. Box 81
          Columbus, GA 31902
25        (706) 317-3111
```

```
 1          (Proceedings on October 14, 2011, commencing at
 2     10:03 a.m., as follows:)
 3            THE COURT:  Good morning.  This is Judge Land.  Let
 4  me just go ahead and place on the record that this is a status
 5  conference in the case of Mark Daniel -- is it "LIT-tal" or
 6  "LIE-tal"?
 7            MR. JOHNSON:  That's "LIT-tal," Your Honor.
 8            THE COURT:  -- Lyttle versus the United States, et
 9  al., Case 4:11-CV-152.
10            As you know, the case has been transferred to the
11  Middle District from the Northern District.  And I just wanted
12  to have this telephone conference at the outset of our handling
13  of the case to try to get a handle on where we are and the most
14  efficient way to move forward.
15            I understand that we have motions to dismiss and
16  motions for summary judgment filed on behalf of the United
17  States and the United States employees.  There appears to be a
18  request by the plaintiff, at least as to the motions for
19  summary judgment, that the plaintiff wants to take some
20  discovery before the Court rules on those particular motions.
21  And I guess what I want to try to find out at the outset is, if
22  there is going to be some discovery necessary to respond to
23  some of the motions for summary judgment, whether it wouldn't
24  be more efficient to develop a scheduling order to allow for
25  that discovery to occur.  And then when that is finished, the
```

1   Court can rule on the motions for summary judgment and the
2   motions to dismiss.
3           I understand there are some motions to dismiss that
4   are not motions for summary judgment in the alternative.  But
5   if the discovery that's going to be necessary to respond to
6   some of the summary judgment motions is going to be overlapping
7   with all of the claims, I'm not sure that it is the most
8   efficient handling of the case to take all of the motions to
9   dismiss under advisement and then rule on them and -- which
10  would create some delay -- and then allow discovery to occur
11  after that point.
12          So I want to get some input from the attorneys as to
13  your position on how we should proceed.  This case has been
14  pending quite a while, and I want to try to move it along with
15  as little delay as possible.
16          From the plaintiff's perspective, Mr. Watt and
17  Mr. Johnson, first of all, with regard to the official-capacity
18  claims in your Counts 4 and 5, in which -- which would be
19  treated as claims against the United States -- are you still
20  contending that you have got claims against the United States
21  separate and apart from your federal tort claims?
22          MR. JOHNSON:  We are, Your Honor.  This is
23  Mr. Johnson.  We are.  And that is one of the issues that the
24  official-capacity defendants have raised in the motions to
25  dismiss, and so we are contending that those claims should go

```
 1   forward.
 2            THE COURT:  Even the damage claims?
 3            MR. JOHNSON:  Yes.
 4            MR. WHITMAN:  Your Honor, this is Joe Whitman from
 5   the federal defendants.  In fact, in their response brief to
 6   that particular claim, the plaintiff specifically withdrew his
 7   damages claim against the official-capacity defendants under
 8   the Rehabilitation Act.
 9            MR. JOHNSON:  That is correct.  We did withdraw
10   one -- the Rehabilitation Act claim.
11            THE COURT:  Well, what damage claim remains against
12   the United States other than the claims under the Federal Tort
13   Claims Act?
14            MR. WHITMAN:  Your Honor, this is Joe Whitman again.
15            THE COURT:  Whoa, whoa, whoa --
16            MR. WHITMAN:  As far as I can tell, there are no
17   damages claims other than the Federal Tort Claims Act --
18            THE COURT:  Mr. Whitman, this is not your complaint.
19   You did not file the complaint.  So I'm asking the plaintiff
20   first.  I'll give you plenty of opportunity to respond.  But I
21   want to try to find out from the plaintiff what claims he
22   intends to pursue, and then you can respond.
23            MR. WHITMAN:  My apologies, Your Honor.
24            THE COURT:  Mr. Johnson or Mr. Watt.
25            MR. JOHNSON:  Your Honor, I -- now that my memory is
```

1  refreshed, I believe that's correct, Your Honor.  I believe
2  that the -- that there are no other damages claims against the
3  United States.  The other damages claims lie against the
4  individual-capacity defendants.
5         THE COURT:  All right.  And are you still contending
6  that you have got some type of injunctive relief claim under
7  Counts 4 and 5 unrelated to the Federal Tort Claims Act?
8         MR. JOHNSON:  That we are, Your Honor, yes.
9         THE COURT:  And that's what I'm not really
10 understanding.  You claim that there's a substantial likelihood
11 that this could recur with regard to Mr. Lyttle, that he could
12 be deported again?  That seems quite a stretch.
13        MR. JOHNSON:  Well, you know, we are, Your Honor.
14 And this is something that -- we are still contending that, and
15 we do believe that -- and we've set this out in our briefing.
16 I might not do total justice to our arguments right here and
17 now except to say that this is an unusual case and this is
18 something that he's not really been able to shake.  And so --
19        THE COURT:  That's not the issue for the injunctive
20 relief claim, is it?  Isn't the issue for the injunctive relief
21 claim whether there is likely to be a continuing constitutional
22 violation?
23        MR. JOHNSON:  Yes.  That is correct, Your Honor,
24 but --
25        THE COURT:  Well, just help me understand how that --

1  how you think it's likely that they're going -- after all of
2  this, they're going to deport Mr. Lyttle again.
3          MR. WATT:  Your Honor, this is Brian Watt.  One of
4  the remarkable aspects about Mr. Lyttle's case is that after he
5  was able to make it back to the United States after four and a
6  half months in Mexico and Central America, he was facing
7  deportation yet again in Atlanta --
8          THE COURT:  But didn't they -- I understand they're
9  at the airport, he was on the list, and so they were going to
10 deport him again.  But wasn't it within hours or a day or two
11 that they reversed that decision and then made the, in effect,
12 final decision that he's an American citizen and should not be
13 deported?
14         MR. WATT:  Well, I think part of that is correct,
15 Your Honor, but I don't think that we've gotten to the point
16 where we're convinced that his record is sufficiently clear to
17 the point that his name would not pop up, if he was to try to
18 go out of the country, as someone who has been previously
19 deported and has subsequently tried to reenter the country
20 illegally.
21         THE COURT:  Okay.  So what is the --
22         MS. IHSANULLAH:  Your Honor, this is Neelam
23 Ihsanullah from the United States.  Could I address this
24 issue?
25         THE COURT:  I'm not going to rule on this on the

1  merits today.  I'm just trying to understand the nature of the
2  claims that the plaintiff is asserting.
3             MS. IHSANULLAH:  I just wanted to point out that
4  the -- as you probably remember, that he -- Mr. Lyttle's
5  removal order was finalized in April of 2009.  His proceedings
6  were terminated with prejudice.  And also it's been three years
7  since the facts of this case with no further injury to
8  Mr. Lyttle.  And the burden is on him to show the -- a threat
9  of future injury, and he simply hasn't done that.
10            THE COURT:  Well, as I said, I'm not going to rule on
11 that today.  I was just trying to see whether or not the
12 plaintiffs were still going to continue to pursue this and
13 whether I was going to need to rule on it.  Apparently I am.
14 It seems mighty weak, but I'll take a look at -- I'll take a
15 look at it.
16            The other claims that there are pending motions to
17 dismiss or motions for summary judgment relate to the *Bivens*
18 claims, in which the government contends that there is
19 qualified immunity as a matter of law.  Of course, they filed
20 no summary judgment motion as to that, those claims.
21            Is that correct --
22            MR. CUTLER:  Yes.  This is David Cutler for the
23 federal defendants.  Yes, that is correct.
24            THE COURT:  That's only a motion to dismiss.
25            MR. CUTLER:  That's correct, Your Honor.  It's a

1  motion to dismiss.
2          THE COURT: What about the Federal Tort Claims Act
3  claims? They filed a motion to dismiss or, in the alternative,
4  summary judgment.
5          Mr. Johnson or Mr. Watt, what discovery are you
6  seeking with regard to those claims that you would like to
7  conduct before the Court rules on those motions?
8          MR. JOHNSON: Your Honor, that's going to be general
9  fact discovery surrounding the events that led to Mr. Lyttle's
10 incarceration and deportation, the steps that were taken not —
11 the policies that were followed and not followed. We need to
12 understand their factual contentions surrounding the interviews
13 and discussions they had with Mr. Lyttle and the steps they
14 took and they did not take that ultimately led to his
15 deportation. There are some issues surrounding their notice of
16 his mental condition that we're going to need to look at.
17         THE COURT: Well, tell me how that discovery relates
18 to the issue of whether they were engaged in discretionary
19 functions and whether your claims are cognizable as tort claims
20 under Georgia law. That's their argument on the summary
21 judgment motion to dismiss, that these -- even accepting the
22 allegations in your complaint as true, that they were engaged
23 in discretionary functions and, therefore, there's no liability
24 under the Federal Tort Claims Act; or the tort claims that you
25 allege are not recognized under Georgia law and, therefore, you

1   cannot recover under the Federal Tort Claims Act.
2           How is this discovery going to flesh out facts that
3   are needed to resolve those legal issues?
4           MR. JOHNSON:  Well, Your Honor, in the first instance
5   we believe that the claims are based upon -- the claims as pled
6   are cognizable as Georgia tort as a matter of law, and so we've
7   addressed that in our response brief.
8           We actually did not argue -- to be fair, in our
9   response brief we didn't argue that we need discovery in order
10  to determine whether or not these are discretionary functions
11  or not.  But what we believe that the discovery will show
12  was -- will show that some or much of the conduct that we're
13  challenging is outside the ambit of any discretionary function,
14  based upon the limits of that doctrine, including with regard
15  to the policies that governed the ICE officials and how they
16  handled the case.
17          THE COURT:  So the discovery you need goes to the
18  question of whether or not they were engaged in discretionary
19  activities or functions.
20          MR. JOHNSON:  Among other things, it does, yes.
21          THE COURT:  Well, I'm talking about as far as the
22  Court deciding their motion for summary judgment.  As I
23  understand it, you filed a request under Rule 56 that you want
24  to do discovery before the Court rules on a summary judgment
25  motion.

1    MR. JOHNSON:  Well, Your Honor, I did, but I want to
2    clarify that.  The summary judgment motion was only to a very
3    discrete -- the summary judgment aspect of their motions was
4    only to a discrete part of their claim.  And our 56 -- or now
5    56(d) response was only after the summary judgment motion.  And
6    that had to do with the administration of medicine at the
7    Stewart detention facility.  So we did not argue in our
8    response that we need discovery in order to address all of the
9    various other legal arguments in the motion to dismiss.
10   THE COURT:  So what is the discovery you are seeking
11   to respond to their summary judgment motion?
12   MR. JOHNSON:  This has to do with the circumstances.
13   He was given -- we contend he was given a dangerous dosage of
14   medication that facilitated and enabled a suicide attempt when
15   he was held at Stewart Detention Center.  That's a discrete
16   issue that's a little bit sort of on the side and separate and
17   apart from the circumstances that led to his being deported.
18   And so it was only on that issue where we contended that we
19   needed some additional discovery.
20   THE COURT:  So the plaintiff's position is that with
21   regard to all of these pending motions they can all be decided
22   based on the present record, with the exception of the limited
23   discovery that you seek on this dangerous -- what you called
24   dangerous drug situation.
25   MR. JOHNSON:  Right.

1    THE COURT:  Is that true?

2    MR. JOHNSON:  That is true, Your Honor.  Just to make

3  sure I'm clear about it, though, I mean, we believe that these

4  are all claims that require discovery on the merits.  But we

5  think that the Court can -- under the standards of Rule 12 can

6  rule on those motions based on what it has before it.

7    THE COURT:  Well, I don't want to --

8    MR. JOHNSON:  Maybe that's just another way of saying

9  that we believe that the motion should be denied so that we can

10 proceed to discovery.

11   THE COURT:  Well, that's fine.  But this is what I

12 don't want to happen.  They have filed -- with regard to Counts

13 6 through 9 and with regard to Counts 4 through 5, they have

14 filed a motion to dismiss or, in the alternative, motion for

15 summary judgment.

16   MR. WHITMAN:  Your Honor, this is Jim Whitman.  If I

17 could respond --

18   THE COURT:  No, sir.  Just let me finish, please,

19 unless you're saying I've misread your pleading.

20   MR. WHITMAN:  I believe you may have, Your Honor.

21 That's why I just wanted to make sure the record was clear.

22   THE COURT:  You have not filed a motion to dismiss

23 or, in the alternative, motion for summary judgment with regard

24 to the Counts 6 through 9?

25   MR. WHITMAN:  Actually, no, Your Honor.  What we have

```
 1   done is we've filed a motion to dismiss -- motion to dismiss
 2   with respect to Counts 4, 5, 6, 7, and 9.  We filed a motion
 3   for summary judgment only as to Count 8, which is the medical
 4   negligence claim.  Everything else is a motion to dismiss.
 5            THE COURT:  Okay.  Give me just one minute.
 6            Okay.  So Count 8 is the only one where you're
 7   seeking summary judgment.
 8            MR. WHITMAN:  That's correct, Your Honor.
 9            THE COURT:  And that's the one where you're seeking
10   to do some discovery.  Is that correct, Mr. Johnson or
11   Mr. Watt?
12            MR. JOHNSON:  That is correct, Your Honor.
13            THE COURT:  Okay.  So all the other ones are filed
14   under Rule 12, and they're based solely on the pleadings.  Is
15   that right, Mr. Whitman?
16            MR. WHITMAN:  That is correct, Your Honor.
17            THE COURT:  And they are ripe and ready to be
18   decided.
19            MR. WHITMAN:  We believe so, Your Honor.
20            THE COURT:  Do you agree with that, Mr. Johnson?
21            MR. JOHNSON:  Yes, Your Honor.
22            THE COURT:  All right.  Well, let's do this, then.
23   Is the discovery that you are going to do with regard to Count
24   8 going to overlap with any of the other discovery in the
25   case?
```

1      MR. JOHNSON:  Your Honor, I would say minimally, if
2  at all.  I mean perhaps minimally, but it's largely a little
3  bit separate.
4      THE COURT:  Well, I guess what I'm trying to find out
5  is -- do you want to be conducting that discovery while I am
6  deciding the motions to dismiss, or would it be more efficient
7  to wait and see how I rule in the motions to dismiss so that if
8  I don't dismiss all of them, then you can do that discovery
9  when you're doing other discovery?
10     MR. JOHNSON:  Your Honor, although we are anxious to
11 get on with discovery, I must admit I do think the most
12 efficient thing would be to get a ruling from the Court on the
13 motion to dismiss and -- so we can organize all discovery
14 knowing the shape of the case.  So I do think it probably would
15 be most efficient to hold up on discovery until we have that
16 ruling.
17     THE COURT:  Are you okay with that, Mr. Whitman?
18     MR. WHITMAN:  We are, Your Honor.  We believe that is
19 appropriate as well.
20     THE COURT:  All right.  Then what I'm going to do,
21 I'm going to rule on the motions to dismiss and defer ruling on
22 the motion for summary judgment with regard to Count 8.  And
23 after I rule on the motions to dismiss, we will enter a
24 scheduling order that sets out the discovery that is
25 appropriate for any claims that remain after I rule on the

BETSY J. PETERSON, RPR, CCR
Federal Official Court Reporter
Post Office Box 81
Columbus, Georgia  31902
(706) 317-3111

1    motions to dismiss, including Count 8.
2             All right.  Well, that seems simple enough.  We'll
3    just need to rule on the motions to dismiss, and at that time I
4    will -- if I -- well, whether I grant or deny, there will still
5    be the claims against Correction Corp of America.  But we'll
6    continue to -- we will not enter a scheduling order until I
7    enter an order on the pending motions to dismiss.
8             Does that sound like a good plan for the plaintiff,
9    Mr. Watt, Mr. Johnson?
10            MR. JOHNSON:  Yes, Your Honor.  I agree with that.
11            THE COURT:  Mr. Whitman, are you okay with that?
12            MR. WHITMAN:  Yeah.  But just for the record, Your
13   Honor, we want to just indicate that we do believe the motion
14   for summary judgment could be granted based on the record as it
15   exists now.  But we understand what you've said and will
16   obviously proceed accordingly.
17            THE COURT:  Well, I'm just going to hold out on Count
18   8 since there has been no discovery and they claim they need
19   some on it.  And we'll rule on the motions to dismiss, and then
20   we'll do a scheduling order for what remains.
21            Okay.  Anything else from the plaintiffs?
22            MR. JOHNSON:  I don't think so, Your Honor.
23            THE COURT:  From the defendant?
24            MR. WHITMAN:  No, Your Honor.
25            MR. CURRY:  None, Your Honor.

1       THE COURT:  Okay.  Mr. Curry, you represent --

2       MR. CURRY:  CCA, Judge.

3       THE COURT:  Okay.  CCA.  All right.

4       Okay.  Well, we will -- of course, we just got this
5  case, I think, this week.  So it's not like you're going to be
6  getting an order from us next week.  But we will move it
7  forward and issue a ruling after we've had time to consider all
8  of the arguments made in the motions.

9       Now, just so the record is clear, Mr. Watt and
10 Mr. Johnson, you have abandoned your damages claims under
11 Counts 4 and 5.  Is that correct?

12      MR. JOHNSON:  I'm almost certain that's correct, Your
13 Honor.

14      THE COURT:  Okay.  All right.  We will send you a
15 written order when we have prepared one.  Thank you.

16      (Proceedings Concluded)

17                  CERTIFICATE OF REPORTER

18      I, Betsy J. Peterson, Official Court Reporter of
the United States District Court, in and for the Middle
19 District of the State of Georgia, Columbus Division, a
Registered Professional Reporter, do hereby CERTIFY that the
20 foregoing proceedings were reported by me in stenographic
shorthand and were thereafter transcribed under my direction
21 into typewriting; that the foregoing is a full, complete, and
true record of said proceedings.

22
                     This 18th day of November, 2011.
23

24                   s/Betsy J. Peterson
                     Betsy J. Peterson, RPR,CCR
25                   Federal Official Court Reporter